## ALONZO W. SLAYBACK, Respondent, v. DAVID P. WETZEL, Appellant.

### St. Louis Court of Appeals, December 14, 1909.

1. **REAL ESTATE BROKERS: Instructions: Inconsistent.** Where, in an action by a broker for commissions for procuring a purchaser of real estate, the evidence showed he was employed to procure a purchaser willing to pay $16,000, for a commission of whatever was obtained in excess of that sum; that he procured a purchaser willing to pay $16,500 on condition the owner would pay two and one-half per cent. thereof to the purchaser's agent as compensation in the transaction, and that the owner refused to convey, an instruction that the broker could recover $500, and an instruction that he could recover the difference between $16,000 and the sum which the purchaser secured by him was willing to pay for the property, were inconsistent.

2. ———: ———: **Purchaser Ready to Buy on Seller's Terms not Hypothesized.** In an action by a real estate broker for having found a purchaser for defendant's property, an instruction which permitted a recovery by plaintiff, if the jury believed he procured a purchaser, ready, willing and able to buy the property, was defective in omitting to require the jury to further find the proposed purchaser was willing to purchase on the terms given the broker by his principal.

3. ———: ———: ———: **Error not Cured by Another Instruction Including that Hypothesis.** The error of said instruction was was not cured by another which included the hypothesis omitted therefrom, inasmuch as the two instructions were inconsistent.

4. ———: **Broker Entitled to Recover, When.** A broker employed to procure a purchaser of real estate earns his commission when he produces to the owner a purchaser ready, able and willing to purchase on the terms on which the broker is authorized to negotiate the sale.

5. ———: **Evidence: Facts Showing Sale was not Consummated Competent.** A broker employed to procure a purchaser willing to pay $16,000 net, for a commission of whatever was obtained in excess of that sum, procured a purchaser willing to pay $16,500, on condition that the owner pay to a third person as purchaser's agent, for his commission in the transaction, two and one-half per cent thereof. The principal refused to accept

said contract, and the broker brought suit against him for commission on the theory he had procured a purchaser ready, willing and able to buy. *Held*, the fact of defendant's refusal to accept the contract and that the sale fell through, was relevant and material, as tending to prove the whole deal fell through and was abandoned by the parties to it.

6. ———: Broker not Entitled to Commissions Unless Purchaser Will Buy on Owner's Terms. Where a broker employed to procure a purchaser, on specified terms, procured a purchaser who contracted to purchase the property on different terms, and the owner refused to accept such terms, the broker did not procure a purchaser, and was not entitled to a commission, especially where the contract with the purchaser stipulated that it was subject to the approval of the owner.

7. ———: ———: Owner's Right to Fix Terms. An owner authorizing a broker to sell real estate for a sum netting the owner a specified amount, for a commission of whatever was obtained in excess of such amount, reserves to himself the right to determine the details of the contract of sale, and a contract undertaking to fix such details not accepted by the owner is not a sufficient contract to enable the broker to recover commissions.

8. ———: ———: ———: Cash Sale. A broker authorized to sell real estate for a specified sum for a commission of the amount received in excess of that sum has authority to make a cash sale only.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Williams*, Judge.

REVERSED.

*H. A. Yonge, Bruce Starke* and *Jones, Jones, Hocker & Davis* for appellant.

(1) There was no evidence that plaintiff was the procuring cause of the offer made by Mrs. Freasier, through her agent, to the defendant, and the judgment of the trial court should, therefore, have been for defendant. 19 Cyc. 257, and cases cited; Pollard v. Banks, 67 Mo. App. 187; Henkle v. Dunn, 97 Mo. App. 671; Campbell v. Vanstone, 73 Mo. App. 84; Crowley v. Somerville, 70 Mo. App. 376; Tooker v. Duckworth,

107 Mo. App. 231; Vandyke & Co. v. Walker, 49 Mo. App. 381. (2) A real estate broker does not earn his commissions under a contract to sell the real estate of his principal until he produces a purchaser, ready, able and willing to buy, unconditionally, for the price demanded. Blackwell v. Adams, 28 Mo. App. 62; Zeidler v. Walker, 41 Mo. App. 118. (3) The undertaking of a real estate broker to sell the real estate of his principal is not performed by producing one who is willing only to enter into conditional or optional contract for the purchase. Zeidler v. Walker, 41 Mo. App. 118; Reiger v. Bigger, 29 Mo. App. 421; Kimberly v. Henderson, 29 Md. 515. (4) Defendant's instructions 3 and 4 correctly declared the law and should have been given without amendment. Zeidler v. Walker, 41 Mo. App. 118.

*Vital W. Garesche* for respondent.

(1) Where a broker is the procuring cause of the negotiations which result in a sale of property at the instance of the vendor, he is entitled to his commission though the negotiations are conducted and concluded by the principal in person. Morgan v. Keller, 194 Mo. 663; Sallee v. McMurry, 113 Mo. App. 253. (2) Where a real estatee broker procures a prospective purchaser who is ready, able and willing to purchase on defendant's terms, and defendant refuses to convey for any cause, the broker is entitled to his commission. Brown v. Smith, 113 Mo. App. 59; O'Neil v. Printz, 115 Mo. App. 215; Holland v. Vinson, 124 Mo. App. 417; Hynes Ex. v. Bettelle, 70 Mo. App. 344. (3) A real estate agent, when he has found a purchaser for his principal who is willing, able and ready to take the land at the price asked by his principal, is entitled to commission on the failure or refusal of the principal to consummate the bargain. Finch v. Trust Co., 92 Mo. App. 263. (4) Where a broker employed to sell real estate produces

one who desires and is able to purchase, he is entitled to his commissions, though the negotiations for the sale were not consummated in writing. Goodson v. Embleton, 106 Mo. App. 77. (5) Where an agent employed to sell real estate finds a purchaser who is both able and willing to purchase the property on the authorized terms, his right to commission will not be impaired by a default of his principal in refusing to consummate the sale. Gwinnup v. Sibert, 106 Mo. App. 709. (6) The verdict is conclusive, if there is any evidence to sustain it, or the evidence tends to sustain it. Woolen Mills v. Edwards, 84 Mo. App. 448; Liese v. Meyer, 143 Mo. 547. (7) A verdict will not be disturbed as unsupported by evidence unless there is a total failure of evidence, or the verdict is so clearly against the weight of the evidence that it shows passion or prejudice on the part of the jury. Fullerton v. Carpenter, 97 Mo. App. 197; Everman v. Eggers, 106 Mo. App. 732. (8) Where the evidence is equally balanced or nearly so, and would warrant a verdict for either party, the verdict will not be disturbed. Weller v. Wagner, 181 Mo. 151; Falkinburg v. Daggs, 105 Mo. App. 595. (9) On appeal, the court will not consider whether the verdict is against the weight of the evidence. Merton v. Threshing Mach. Co., 99 Mo. App. 630; Albin v. Railroad, 103 Mo. App. 308; Herf & Frerichs Chemical Co. v. Lackawanna Line, 100 Mo. App. 164. (10) A verdict will not be set aside because of a preponderance of testimony against it, if there is some substantial testimony on which the verdict can be based. Zellars v. Water & Light Co., 92 Mo. App. 107. (11) A verdict of a jury on the weight of the evidence will not be disturbed on appeal. Colyer v. Railroad, 113 Mo. App. 457; Nephler v. Woodward, 200 Mo. 179; Dowling v. Wheeler, 117 Mo. App. 169.

STATEMENT.—Action by plaintiff on a contract alleged to have been entered into by him with defendant, to recover five hundred dollars commission on sale of

flats in St. Louis. The action was commenced before a justice of the peace, a statement or petition being filed in which it is set up that on the 22d of August, 1907, defendant entered into a contract in writing with plaintiff whereby he employed plaintiff to sell certain real estate described, being a lot in the city of St. Louis, on which were certain buildings described; that by the contract defendant promised and agreed with plaintiff that if plaintiff found a purchaser for the property, ready, able and willing to purchase the same, at and for the price and sum of $16,000, net to defendant, defendant would pay plaintiff as a commission for obtaining such purchaser any sum which the purchaser would agree to pay in excess of $16,000. Plaintiff avers that he entered upon his employment and found a purchaser, ready, able and willing to purchase the same at and for the price and sum of $16,500, and thereupon introduced said purchaser to defendant, and that on the 8th of January, 1908, the purchaser so obtained by him entered into a contract with defendant to purchase the property at the price and sum of $16,500, wherefore plaintiff claims defendant is indebted to him in the sum of five hundred dollars, the payment of which was refused, although demanded; wherefore he asks judgment for the five hundred dollars and costs.

The case was tried before the justice and there decided in favor of defendant, whereupon plaintiff appealed to the circuit court, where it was tried before a court and jury, no written pleadings being in the case, save the statement filed before the justice. At the trial in the circuit court, plaintiff introduced his contract with defendant which is as follows:

"Aug. 22nd, 1907.

I hereby agree to pay A. W. Slayback the commission for sale of property 4975-75a-77-77a Fountain avenue, same to net me $16,000. Any amount over said $16,000 to be considered commission.

Dr. D. P. Wetzel."

After identifying the contract, plaintiff gave testimony tending to show that upon obtaining this contract, he had endeavored, without success, to sell the property to various people, until sometime in January, 1908, when he called the property to the attention of a Mrs. Freasier.    There was evidence tending to show that Mrs. Freasier had known of the property sometime before, but apparently had abandoned all consideration of it until her attention was again called to it by plaintiff, who told her that he had it for sale and that if she would consider buying the flats he thought he could get them for her for a little less than $17,000, and that if he (plaintiff) was to make any money on the transaction, he had to get more than $16,000 for them.    Mrs. Freasier told him she would consider the matter, and plaintiff notified defendant of his offer to Mrs. Freasier and told him that Mrs. Freasier would probably call on him about the matter.    This apparently was all of the transaction that plaintiff had with Mrs. Freasier in regard to this matter, she declining to conduct the negotiation through plaintiff or to have anything to do with him in the matter, saying that Mr. Harkrader of the Harkrader-Singer Realty Company was her agent in real estate matters.    A few days after this, Mrs. Freasier deposited three hundred dollars earnest money with Mr. Harkrader, and the latter drew up what he calls a "receipt for earnest money," which Harkrader signed in the name of his company and which Mrs. Freasier signed, it being the only offer of purchase that she had ever signed or authorized any one to present for her in connection with this property.    The paper referred to is dated January 8, 1908, and acknowledges the receipt from Mrs. Freasier of the sum of three hundred dollars as earnest money and part purchase money for a certain parcel of improved property in St. Louis, describing the property of the defendant, and the receipt then continues with the recital, "which property is this day sold to her for the total sum of sixteen thousand five

hundred dollars, payable as follows: Seven thousand dollars ($7000) cash, and purchaser agrees to assume two deeds of trust aggregating $9500, one for $8000 drawing 5 per cent interest and one for $1500 drawing six per cent interest. This sale to include all fixtures,"· etc., on the premises, not the property of tenants, interest payable semi-annually; deferred payments secured by a first deed of trust on premises; title of the property to be perfect and to be conveyed by warranty deed, free of liens and incumbrances, except the taxes of 1908 and thereafter, which the purchaser assumes and agrees to pay; also subject to restrictions recorded; rents, insurance, water rates and interest to be adjusted to day of transfer of the property. "If upon examination, the title be found imperfect and cannot be perfected within a reasonable time, said purchaser shall be paid a reasonable cost of examining the title and the earnest money to be refunded;" sale under the contract to be closed on or before January 21, 1908, at the office of Harkrader-Singer ●Realty Company, "and if not closed by that time, owing to the failure or neglect of the purchaser to comply with the terms herein, the abve mentioned earnest money is to be forfeited.

"Commission on above sale, 2 1-2 per cent. This sale under above terms and conditions is made subject to the approval of the owner of property.

"Accepted under the above terms and conditions. (Signed)        Jennie A. Freasier, Purchaser.
"HARKRADER-SINGER REALTY CO.,
"Per E. T. Harkrader."

Under these signatures is the word, "accepted," and a blank, followed by the word "owner." No signature of Dr. Wetzel or of any one else is in this blank.

Plaintiff saw Dr. Wetzel after this contract for sale had been presented to the doctor, and the latter told him that he had better see Mrs. Freasier and see if he could not get her to employ him as her agent and

146 App.—12

sign up a contract of purchase through him. This, plaintiff says, he declined to do and informed the defendant, Dr. Wetzel, that he considered that he had done all that he had undertaken to do and was entitled to his $500 commission. Dr. Wetzel denied this and he and plaintiff appear to have ended their relations somewhat abruptly and to have had nothing further to do with each other in the transaction. Mrs. Freasier testified, as before noted, that this was the only contract of purchase she had ever entered into, concerning this property, and that she was, at that time, ready, willing and able to make the purchase of the property, at the price and on the terms and conditions set out in this proposed contract.

According to the testimony of the defendant, when plaintiff notified him that he had offered the property in question to Mrs. Freasier at the price of $16,500, defendant told him that he would sell at that price if he (plaintiff) would get her contract to act as her agent, but that the plaintiff did not get a contract from Mrs. Freasier for the purchase of the property at the price at which he gave it to him for sale; that he (defendant) was ready and willing to sell for $16,500 and so informed plaintiff at the time, but that when Mr. Harkrader, as agent of Mrs. Freasier tendered the contract and offer to purchase the property at the price of $16,500, the offer was accompanied with the provision that the defendant should pay Harkrader for his company the sum of $412.50 for commission on the sale. Whereupon the defendant refused to make the sale through the real estate company on any such terms and he told plaintiff that if he would get the offer direct from Mrs. Freasier to him, he would close the sale through him and pay him his commission, but that he must have $16,300 net for the property and that to close through the Harkrader-Singer Realty Company and pay plaintiff $500 and Mr. Harkrader's company $412.50, that is, paying each of them the commission

demanded, he would not be getting his price for the property. Negotiations thereupon appear to have ceased betweeen all the parties, defendant never accepting the contract submitted to him by the Harkrader company and no offer of purchase other than that apparently ever having been submitted to him. The earnest money appears to have been returned by the Harkrader company to Mrs. Freasier, along with the proposed contract which she had signed. It appears that the defendant offered to show that the property had never been sold at all, either to Mrs. Freasier or to any one, but this offer of proof was excluded by the court, apparently on the theory that it was immaterial whether the sale had been actually consummated or not. Sufficient, however, appears in the testimony which is in the record to show as a fact, not only that defendant never accepted the offer as made by Mrs. Freasier, but that the sale never did take place.

At the close of the testimony of the plaintiff, defendant asked for an instruction directing a verdict in his favor which was refused, defendant excepting. At the conclusion of the testimony in the case, the court, at the instance of plaintiff, gave two instructions as follows:

"1. The court instructs the jury that if you believe and find from the evidence that heretofore, to-wit, on on the 22d day of August, 1907, defendant employed and authorized plaintiff in writing to sell his, defendant's, property consisting of a row of flats at the northeast corner of Kings Highway and Fountain avenue in the city of St. Louis, Missouri, at and for the sum of sixteen thousand dollars, and agreed to pay plaintiff as his compensation therefor any sum which he might realize over above said sum of sixteen thousand dollars. and that thereafter, in pursuance of such employment, plaintiff procured a purchaser for said flats who was ready, able and willing to purchase said flats at and for the sum of sixteen thousand and five hundred dollars,

then your verdict will be in favor of the plaintiff, for such sum as you may believe and find from the evidence was the difference between said sum of sixteen thousand dollars and said sum of sixteen thousand five hundred dollars.

"2. The court.instructs the jury that if you find a verdict in favor of the plaintiff in this case, under the law and the evidence you will assess his damage at such sum as you may believe and find from the evidence was the difference, if any, between the said sum of sixteen thousand dollars and the sum which you may believe and find from the evidence the purchaser secured by plaintiff, if any, was willing to pay for the flats belonging to the defendant, as described in evidence."

Defendant duly saved exceptions to the giving of these instructions and asked the court to give two instructions numbered 3 and 4 as follows:

"3. The jury are instructed, that if you shall find from the evidence, that plaintiff, while acting as the agent of defendant for the sale of the property in question, informed Mrs. Freasier that it could be purchased for the sum of $16,500; and that subsequently thereto, without any further communication with plaintiff, she authorized Harkrader-Singer Realty Co., to purchase said property for said price of $16,500, and paid to the said Harkrader-Singer Realty Co., the sum of three hundred dollars, as earnest money thereon, and that Harkrader-Singer Realty Company, as' the agents of Mrs. Freasier, endeavored to purchase said property from defendant, and offered to pay him the sum of $16,500 for the same, and defendant refused to consummate said sale, plaintiff cannot recover in this action, unless you shall further find from the evidence that he, plaintiff, was the procuring cause of said offer to purchase said property by Mrs. Freasier, and that the *terms and conditions of said offer was the same, and the* price to be paid to defendant *including commission* on said sale, was the price at which plaintiff was authorized to

sell the same by defendant. *And if you shall find from all the evidence that said offer imposed new or different conditions, and imposed or carried with it a requirement to pay other or additional commissions, from what was agreed to be paid by him to plaintiff, for the sale of said property, plaintiff cannot recover in this action.*

"4.  The court instructs the jurors that to entitle a real estate agent to recevor commissions on a contract for the sale of real estate where the sale was not consummated, the agent must furnish a customer, able, ready and willing to purchase the property of his principal at the price and on the terms given him by his principal, and unless you find from the evidence that Mrs. Freasier, the alleged customer, offered to purchase said property of defendant, *through plaintiff,* at the price and on the terms given plaintiff by defendant *and that defendant refused to consummate the sale,* then your verdict must be for the defendant."

The court gave the instructions, first, however, striking out from them the words underscored or italicized.  Defendant duly excepted to the elimination of these parts of the instructions and to the giving of them with these parts omitted.

The jury returned a verdict in favor of plaintiff in the sum of $500.  Defendant in due time filed a motion for new trial which was overruled, exception saved and the cause brought to this court by the defendant by appeal.

REYNOLDS, P. J. (after stating the facts).—If defendant had accepted the offer of Mrs. Freasier as made, he would have received only $87.50 net over the $16,000, and by accepting the contract and making the sale to Mrs. Freasier, he would have rendered himself liable to the plaintiff for five hundred dollars, if it was true that through plaintiff's presentation of the property to her, Mrs. Freasier had been induced to, or was ready, willing and able to buy, so that out of the $16,500 nom-

inally paid him, defendant would only be realizing $15,587.50. This was not the contract which he had authorized plaintiff to make.

Furthermore, instructions 1 and 2 are inconsistent and confusing. By the first one the jury were told that the amount plaintiff was entitled to recover was the difference between the sum of $16,000 and the sum of $16,500, whereas by the second, they were told that if plaintiff recovered he was entitled to recover the difference between $16,000, "and the sum which you may believe and find from the evidence the purchaser secured by plaintiff, if any, was willing to pay for the flats belonging to the defendant, as described in evidence." If Mrs. Freasier was only willing to pay defendant $16,500, less the commission of two and one-half per cent to Harkrader, her net offer to defendant would be only $16,087.50, and that would entitle plaintiff to only $87.50. This instruction was in conflict with the first instruction, which fixed his right of recovery at $500.

The first instruction is further defective, however, and fatally so, in that it omits from that instruction the very essential requirement that the proposed purchaser was willing to purchase the property on the terms given the agent by his principal. When defendant attempted to correct this by his instruction No. 3, those parts which would have corrected it were stricken out. Instruction No. 3, given at the instance of defendant, as asked, embodied that as a condition to recovery, that the jury could not find for plaintiff, "unless you shall further find from the evidence that he, plaintiff, was the procuring cause of said offer to purchase said property by Mrs. Freasier, and that the *terms and conditions of said offer was the same, and the* price to be paid to defendant, *including commission* on said sale, was the price at which plaintiff was authorized to sell the same by defendant. *And if you shall find from all the evidence that said offer imposed new or different conditions, and imposed or carried with it a requirement to*

*pay other or additional commissions, from what was agreed to be paid by him to plaintiff, for the sale of said property, plaintiff cannot recover in this action."* The court struck out from this instruction asked by the defendant the italicized words. It is true the words, "and on the terms given him by his principal" are in the fourth instruction, but that left it inconsistent with the first.

In Brown v. Smith, 113 Mo. App. 59, Judge Nortoni, at page 68, announces the rule as well settled by the authorities, to be that, "A real estate broker earns his commission when he finds and produces to the seller a buyer for the land who is ready, able and willing to buy upon the terms upon which the broker is authorized to negotiate the sale." He cites many authorities in support of this rule and follows it with the declaration that in such cases, that is, when the broker has performed these acts, the law regards the sale as complete in so far as the agent and his services are concerned and that being so, he is entitled to his commission. It is just as essential that the proposed purchaser is willing to take on the conditions of the proposed vendor, as those terms are prescribed to the agent when the sale of the property was committed to him, as it is that he shall be ready, willing and able to take and pay for the property at all. This same rule is announced by the Supreme Court in Morgan v. Keller, 194 Mo. 663, where many authorities are compiled and commented upon. In omitting to include any distinct reference to this rule in the first instruction given and in striking it out from instruction No. 3, asked by defendant, the court committed error to the prejudice of the defendant.

The court tried this case on the theory that it was immaterial whether a sale had been in fact effected or not, provided plaintiff brought forward a customer ready, willing and able to purchase. That is correct, only however, with the added element that that cus-

tomer was also willing to purchase on terms that came within those authorized to be made by the principal. In the case at bar this last element is fatally lacking. Nor is there any evidence that the defendant accepted the offer of Mrs. Freasier. On the contrary, it is set out in the affidavit, setting out what defendant would have testified, if present, that he refused to make the sale under the contract which proposed that he make it through the realty company, and that that contract obligated him to pay the realty company $412.50 commission on the sale. The proposed contract lacks the signature of the defendant as owner or of any one on his behalf authorized to sign or, in fact, of any one pretending to sign for him, yet it is set out in it, in so many words, that "This sale under the above terms and conditions is made subject to the approval of the owner of property," and the owner never did approve it. It further appears by the testimony, that the earnest money was paid back. Mrs. Freasier testifies positively that she did not buy the property under this contract, which is the only one in evidence in the case, or pretended to be made by her or agreed to by her, and it does not appear that she ever bought it at all under any contract. The fact of refusal of the defendant to accept the contract and the fact that the sale fell through, were facts in this case pertinent, material and relevant to the issue and should have been admitted, and this without at all disturbing the rule that when the agent has procured a purchaser, who comes within the terms of his authority to make a sale, he (the agent) is not required to go on and actually consummate the sale himself in order to entitle him to a commission. We are not disturbing or throwing any doubt upon that rule, but under the facts of this case we hold that testimony of the fact of non-acceptance of the contract by defendant and of an entire failure to consummate the sale on that account, was relevant and material as tending to prove that the whole deal fell through and was abandoned by the parties to it. If

the failure of the sale was caused by defendant's refusal to go on with it, then the plaintiff is entitled to his commission, unless that refusal was justifiable. That is, if defendant refused to consummate the sale, when the proposed purchaser stood ready and was able to comply with the terms prescribed, the agent who brought such purchaser forward is entitled to his commission. That the contract proposed to Dr. Wetzel, in the form proposed, was not the contract which he had authorized this defendant to make, is beyond all question. If he had accepted the contract proposed to him by Mr. Harkrader on behalf of Mrs. Freasier, defendant would have been obligated to have paid to Harkrader's company, as agent for Mrs. Freasier, a commission of two and one-half per cent on the $16,500, and while nominally receiving the $16,500, in point of fact he would have received but $16,087.50. On the theory of plaintiff in the case, that it was through him that the sale was made, and upon the theory upon which the case was evidently determined by the court and jury, the plaintiff having brought the parties together under this agreement would have been entitled to $500 as his commission, that being the difference between the $16,000 and the $16,500, and if defendant had been obliged to pay him this $500 in addition to the $412.50, which he would have had to pay Harkrader or Harkrader's firm, he would have received but $15,587.50, which was nearly $500 below the price at which he had authorized the plaintiff to make the sale. Conceding that Mrs. Freasier made the offer to buy which she did make in the contract in evidence, through the procurement of plaintiff, that does not give plaintiff a right to recover unless that contract was in accordance with the terms of his employment by defendant, or was accepted by defendant as a substantial compliance with those terms. Neither of these are facts. That there was no acceptance of the proposed contract is beyond dispute.

We do not consider it necessary for the purposes of this case to take up and examine in detail the contract which was proposed to the defendant, or to determine whether or not the terms in that contract, even outside of this provision for commission, were within the authorization or agency or employment of the plaintiff. It is sufficient to say that all the defendant had authorized plaintiff to do was to sell for a sum netting defendant $16,000. No authority to adjust the terms or conditions of the proposed sale was committed to the plaintiff. The effect of this was to reserve the determination of details to defendant. The contract which was tendered undertook to provide for a cash payment of $7000 only, the purchaser agreeing to assume two deeds of trust aggregating $9500. It further undertook to provide that the sale was to include all fixtures, such as screens, shades, gas stoves, etc., now on the premises. It undertook to provide for the payment of interest semi-annually at a given rate and to provide for securing the deferred payments by a first deed of trust on the premises. It undertook to provide that if upon examination of the title it was found to be imperfect and was not perfected within a reasonable time, the purchaser was to be paid the reasonable cost for examining the title and the earnest money should be refunded; it undertook to provide that the sale under the contract should be closed on or before January 31, 1908, at the office of Harkrader-Singer Realty Company, and if not closed by that time, owing to the failure or neglect of the purchaser to comply with the terms thereof, the earnest money was to be forfeited. Not a word can be found in the contract of employment defendant gave to plaintiff, authorizing the plaintiff to settle these matters. When this proposed contract, with all these provisions set out in it, was submitted to the defendant, he was under no obligation to accept it. It was the only one presented. At the very outset of it, it provided, not for a cash sale but for part cash and part assumption of two

deeds of trust. Plaintiff's authority was for a cash sale, for the presumption always is that when a man names the price at which he will sell, nothing else being said, that he means a sale for cash.

Furthermore, in this proposed contract of sale, it is distinctly set out, "That this sale under above terms and conditions is made subject to the approval of the owner of the property," and as before remarked, there is not a particle of testimony in the case to indicate that the owner of the property ever accepted it, the evidence being directly to the contrary. So that the evidence not only fails to show a purchaser produced ready to purchase on the terms proposed, but shows one who proposed terms defendant was not only not bound to accept, and which he had not only not authorized plaintiff to include, but which defendant refused to accept.

On consideration of all the facts in the case and of the law as applicable to those facts, plaintiff cannot recover. The judgment of the circuit court is reversed. All concur.