J. E. JORDAN, JR., RESPONDENT, v. MORRIS DANIELS, APPELLANT.

Kansas City Court of Appeals. April 7, 1930.

750

*Maurice J. O'Sullivan* and *O. H. Stevens* for respondent.

*Watson, Gage & Ess* for appellant.

BOYER, C.—Plaintiff sued to recover $3800 with interest alleged to be due as a commission earned in obtaining a person ready, able, and willing to enter into a ninety-nine year lease upon property owned by defendant.

The petition alleges that in the month of February, 1925, defendant owned, or claimed to own, real estate in Kansas City, Missouri, known as the northeast corner of Armour Boulevard and Broadway; that defendant employed plaintiff to procure a lessee for a period of ninety-nine years and agreed to pay plaintiff for said services the sum of $3800, alleged to be the reasonable value thereof; that plaintiff did procure for defendant a person ready, able, and willing to enter into and accept from defendant said lease on the terms and conditions and provisions fixed by defendant, and on which' terms plaintiff was authorized to procure said lessee; that

plaintiff fully performed all of the work required of him, and that defendant has wholly failed and refused to pay said sum or any part thereof.

The answer was a general denial.

The petition was filed on the 23rd day of June, 1926. The case was tried, and a verdict by nine jurors was returned on the 15th day of March, 1929, in the total sum of $4370. The case was submitted to the jury under plaintiff's main instruction authorizing a recovery upon a finding of the facts required to be found in order to entitle plaintiff to a verdict under the petition.

The errors assigned and points made on appeal are (1) that the court erred in refusing defendant's demurrer to the evidence offered at the close of the case, (2) in rejecting competent evidence, and (3) in refusing to give defendant's offered instructions D 5 and D 9. A statement of facts will be made in view of these assignments.

The evidence on behalf of plaintiff tended to prove that plaintiff had been engaged in the real estate business for two or three years at Kansas City, in association with other parties; that in January, 1925, he called upon defendant to ascertain whether he desired to lease the property in question for a term of ninety-nine years; that defendant informed him that he would be glad to, but that everybody he talked to wanted to buy the property, but that he did not want to sell it, but desired to make a ninety-nine year lease; and stated that the terms would be $7500 per annum for five years; $8500 per annum for five years, and $10,000 per annum for the balance of the term; that taxes were to be paid by the lessee; and purchase option was quoted at $150,000 during the first five years; $175,000 for the next five years; $200,000 for the next ten years, after which time the option would expire; that $7500 was to be deposited as security on the lease; that defendant later repeated the terms to plaintiff's associates who desired to verify them; that defendant said he would be tickled to death if plaintiff could find a man willing to handle it that way; that defendant asked what the commission would be and was informed that it amounted to $3875; that was the customary charge of five per cent for the first $5000, and two and one-half per cent on the balance of the minimum sale price; that defendant stated that was all right, and that no other agent was at work upon the deal; that shortly thereafter plaintiff reported to defendant that he had a customer; that defendant was enthused over the deal and took plaintiff to see defendant's lawyer in order to draw up the lease; that he informed plaintiff to have the lawyer draw up the lease on the terms given; that the attorney stated he had talked to Mr. Daniels about it and informed plaintiff that he knew about the terms; that the attorney quoted the same terms to him that the defendant had stated, and

agreed to draw the lease and have it ready as soon as possible; that plaintiff subsequently inquired repeatedly about the lease; that defendant informed him it was not finished; that the attorney was working on it and assured plaintiff that it would be ready in a day or so, and not to worry, that it was being drawn at that time; that he saw defendant every day for a week and the conversation was practically the same; that he repeatedly inquired of the attorney about the lease and was put off from day to day with the statement that it would be ready tomorrow; that continued for a week or ten days; that during the negotiations a building clause was required by which $100,000 was required to be expended upon a new building; that this was reported to plaintiff's client and accepted by him; that he had accepted all the terms and conditions required by defendant, but no draft of a lease was ever furnished or presented to plaintiff; and finally defendant informed plaintiff that he would "have to let the deal drop where it is" and that he would have to turn his man down; that plaintiff informed defendant that he had obtained everything that defendant wanted and that his man had stood in line and that defendant replied: "I have got to turn him down anyway." And when asked what was the matter, defendant said: "Well, he is a Jew. That is the main thing. I would rather not deal with a Jew, just to be frank with you, I don't want to deal with a Jew." That plaintiff then proposed another man who would take it on the same terms, and defendant said: "Well, Jordan, to be frank with you, here is the way it is. Barat Guignon came to me and wanted this property. He has been a friend of mine a long time and he came to me and told me he would like to have the property and I just can't turn him down at all." And he further said: "Besides, if I deal with Barat Guignon I won't have a commission to pay because he is in with Jaccard on the deal and has been quite friendly with me and I just can't turn him down."

After this, plaintiff demanded his commission and stated to defendant that he thought he had earned it and that it was due. Defendant said: "Well, you can try and get it;" and if plaintiff sued him that he was protected. "Your damage suit won't worry me for commission. If commission is collected I won't pay it. It won't be me that will have to pay the commission;" that he was protected by a letter from Mr. Guignon. Defendant's attorney, to whom the plaintiff had been referred, did prepare a lease of the character in question, but when it was completed delivered it to other parties, and defendant executed it to the Hampton Realty Company and paid a commission of $3800 to a real estate agency in which Mr. Guignon was interested; Mr. Guignon was also interested in the company that took the lease, and stated in effect that if this lawsuit resulted

adversely to the defendant that he would be forced to indemnify defendant on account of it.

Plaintiff had the assistance of his associates in his efforts to obtain a lessee and had agreed to compensate them for their assistance by paying them an amount equal to a stated proportion of his commission. The proposed lessee obtained by plaintiff testified that he was willing and anxious to obtain the lease on the terms stated, and that he had agreed to accept all terms proposed; and in reference to additional requirements that might be made, that he expected to meet the owner's request; that no lease was ever submitted; that he owned $35,000 in securities and a theater, the income of which was sufficient to take care of the lease, and that he was able to erect a $100,000 building; that while the lease was to be taken in his name, he had made arrangements to associate two other men with himself, one of whom was worth a quarter of a million dollars. The evidence tended to show that the proposed lessee was financially able and could obtain ample funds to carry out all of the proposed terms of the lease, and was anxious to obtain it; and that he had agreed to everything that had been presented to him. The evidence further tends to show that plaintiff's associates made repeated efforts to obtain a draft of the lease from defendant's attorney; that they were put off from day to day with the statement that it was not ready to submit, and they never did obtain a proposed draft of the lease. It was admitted by defendant's counsel that defendant leased the property to another before the draft of the lease was completed for plaintiff or plaintiff's client.

Plaintiff upon being recalled further testified that he submitted the name of his prospective lessee to defendant and that he went over to see defendant's attorney after the proposed lessee had been accepted. Defendant's attorney testified that defendant brought plaintiff to his office; that he had discussed provisions of a lease with defendant long before; that the details were to be left to him; that plaintiff's associates saw him every two or 3 days; that he never furnished a copy of the lease to plaintiff, but under the instruction of defendant, delivered it to Mr. Guignon and that the only draft of a lease drawn was to Jaccard or Hampton Realty Company.

Defendant testified that at the time the subject was discussed with plaintiff that he did not own the property, but became owner thereof on February 4, 1925; that he submitted to plaintiff ''tentative terms'' and stated that the man plaintiff would procure would have to be acceptable to him; that plaintiff's associates called upon him to verify the tentative terms; that he accompanied plaintiff to the office of defendant's attorney and informed the attorney of the general tentative terms that he would accept from plaintiff if he had a client that was acceptable, and instructed the attorney to draw

a rough draft of the lease; that plaintiff's associates at one time tendered a check of $2500 to bind the bargain which he refused; that he declined to accept plaintiff's client because he objected to a man of that type; that maybe he would not be financially able to comply with the lease and that one of the objections was that he was a Jew. Defendant further testified that he afterwards closed the deal with Walter Jaccard; that at the time he accompanied plaintiff to the attorney's office he did not know the identity of plaintiff's client; that during the pendency of negotiations and when plaintiff's associates were talking to him about the deal he told them to take the matter up with his attorney, after he had learned the identity of the proposed lessee; that he informed plaintiff that his attorney would draw up a lease; that he never informed plaintiff to cease his efforts to obtain a lessee; that when the lease was completed, upon his instructions, it was delivered to Mr. Guignon, and that no draft of a lease was ever furnished to plaintiff or the prospective lessee, and that in effect he informed plaintiff that no matter who his party was, that defendant was going to deal with Guignon; that when plaintiff threatened suit that he told him in effect that he did not care, that he was protected.

Further reference will be made to the evidence in a considerat-on of the points raised on appeal as may seem to be appropriate and necessary.

## OPINION.

The first point urged by appellant is that the demurrer to the evidence should have been sustained. This insistence is based upon two alleged reasons (1) because the evidence disclosed that the terms of the lease had never been agreed upon between the parties, and (2) because the evidence shows that plaintiff never produced a lessee who was financially able to carry out the terms which had been proposed.

Under the proved and admitted facts, aided by all reasonable inferences which may be drawn therefrom, and viewed in a favorable light (which advantage must be accorded to plaintiff upon consideration of a demurrer), we have concluded that the evidence was sufficient and ample to require a submission of the case to the jury upon the questions involved. The position of appellant that a failure to agree upon the terms of a lease in its entirety is sufficient to bar plaintiff from recovery is not tenable. The evidence tends to show, as set out in the statement, that every requirement and condition made by defendant had been met, and the proposed lessee was ready, financially able, and willing to accept and comply with them; and that he was waiting and urging that the matter proceed to the execution of the lease. The evidence further tends to show that defendant either failed or refused to cause the lease to be prepared,

and failed to make any other or further requirements or demands, and decided of his own volition to make the lease with other parties and to reject plaintiff's prospect. If appellant's position is correct, then he could defeat plaintiff's right of recovery by refusing to state further terms or conditions, or by refusing and failing to have a lease prepared, even though plaintiff obtained a qualified lessee. Under this theory he could have plaintiff devote any amount of time or expense in an effort to obtain a competent person to comply with all terms and conditions required, and still defeat him by merely refusing to compile a lease with the terms and conditions desired. Such is not the law. When the broker has performed his part of the contract, as the evidence in this case tends to show, he is entitled to compensation if the jury allows it. The fact that a lease was not executed to the person procured by plaintiff is immaterial. [Reavis v. Butterworth, 228 S. W. 844; Moseley-Comstock Realty Co. v. McClelland, 294 S. W. 103, 105; Slayback v. Wetzel, 146 Mo. App. 171; Nooning v. Miller, 178 Mo. App. 297, 299; Cotton v. Meadows, 163 Mo. App. 723; Gelette v. Ridge, 117 Mo. 553, 560; Smith v. Stubb, 293 S. W. 496-7-8.]

Neither can the further insistence be maintained that plaintiff never produced a lessee financially able to carry out the terms proposed. There was evidence on behalf of defendant to the effect that the proposed lessee was, or might be, lacking in his personal financial ability to finance the proposition, but on the other hand plaintiff's evidence is substantial and fully sufficient to warrant a finding of the fact that the proposed lessee was financially able in all respects to comply with each and every term and condition made by the defendant. It was clearly within the competency of the jury to determine this question, which was submitted to it in the instructions given both on behalf of plaintiff and on behalf of the defendant. [Cash v. Wysocki, 229 S. W. 428, 431; Goldsberry v. Eades, 161 Mo. App. 8, 142 S. W. 1080.] The demurrer was properly ruled.

Appellant contends secondly that the court erred in rejecting competent evidence. He offered to prove that it was the general custom prevailing in the real estate trade in Kansas City, Missouri, that a real estate broker was not entitled to his commission until after a lease had been signed by both parties. One of the specific offers of proof is the following:

"I offer to prove by this witness that it was customary under the general customs prevailing in Kansas City, Missouri, and adopted by the real estate board of Kansas City, Missouri, to not even attempt to have a contract signed between the lessor and lessee on ninety-nine year leases until the lease itself was signed for the reason that all the details and terms and conditions of the lease would have to be agreed upon before any written contract could be made between the parties and that when that was done the lease

could be used just as readily as the contract to bind the parties. I offer to prove also by this witness that it is customary in the real estate business in Kansas City, Missouri, and has been a long standing custom approved by the real estate board of Kansas City, Missouri, that commissions are not earned by real estate brokers on ninety-nine year lease transactions until all the details of the lease are worked out, agreed upon by both parties and the lease is signed by the lessor and the lessee.'' This offer was rejected as well as another somewhat similar offer.

Appellant argues that some of the evidence in behalf of plaintiff tended to show that the commission which plaintiff was claiming was based upon the usual and customary charge, and in the light of the rules and customs of the real estate board, and therefore, defendant was entitled to have his offer of proof received; that plaintiff should not be permitted to invoke the rules and customs in order to fix a large commission and at the same time deny to defendant the right to show that under the same rules and customs plaintiff was not entitled to a commission at all because the lease had not been signed by the parties. The substance of the contention is that the custom prevalent at the time and place formed a part of the contract between plaintiff and defendant and that such custom was a proper subject of proof in this case. Among other authorities cited and relied upon by appellant on this subject is the case of Piper v. Allen, 219 S. W. 98. We do not find that this case is persuasive or decisive of this question in appellant's favor. Appellant also cites a number of cases from other states which are claimed to be pertinent, but in view of the law as declared in this State we cannot hold with appellant upon this subject. The answer of defendant was merely a general denial. Defendant did not plead such a custom, and in order to prove same it should be pleaded so explicitly that it will appear not only that the custom existed, but that both parties had knowledge of it at the time and contracted with reference to it. The offer of proof was properly rejected. The following authorities make it clear that, under the pleadings and evidence in this case, the terms of the contract between these parties could not be affected or changed by proof of an alleged custom. [Staroske v. Pulitzer Publishing Co., 235 Mo. 67; Hayden v. Grillo's Adm'r, 42 Mo. App. 1, 5; Tate v. Tyzzer, 208 Mo. App. 290, 234 S. W. 1038, 1041; Dietz v. Nix, 216 S. W. 791, 793; Kirkland v. Bixby, 222 S. W. 462, 464, 465; Maher v. Donk Bros. Coal & Coke Co., 20 S. W. (2d) 888, 895.]

Furthermore, where the terms of a contract are clear and unambiguous they cannot be varied or contradicted by evidence of custom or usage, and this is true whether the contract be written or

verbal. [17 C. J. 511; State v. Public Service Commission, 269 Mo. 63, 189 S. W. 377, 379; Wolff v. Campbell, 110 Mo. 114, 119, 19 S. W. 622, 623.] The point must be ruled against appellant.

The next point made is that the court erred in refusing to give instruction D 5 requested by defendant. The instruction reads as follows:

"The court instructs the jury that if you find and believe from the evidence that defendant told plaintiff in the first meeting between them that any prospective lessee would have to be acceptable to defendant, and if you further find and believe from the evidence that defendant did not at any time agree to accept said Toby Brenner as lessee, then you are instructed that regardless of any other fact or circumstance in this case that plaintiff cannot recover a commission in this case for the failure of defendant to accept the said Toby Brenner as such a lessee, if defendant did not desire him as a lessee of the property in question regardless of defendant's reason therefor."

A part of defendant's testimony has been set out in the statement, and in respect to the terms and conditions of the agreement between him and plaintiff the following questions and answers appear:

"Q. At that time was there anything said by you about the kind of lessee that would have to be procured? A. I said a man would have to be acceptable to me.

"Q. You told Mr. Jordan that? A. I told Mr. Jordan that a man would have to be acceptable to me to go on a ninety-nine year lease."

Further evidence of defendant tends to show that one of the conditions of the employment of plaintiff was that the lessee must be acceptable to the defendant. From the standpoint of defendant's evidence this was an express condition, and was as much an integral part of the contract of employment as any other term or condition thereof. When defendant was informed who the proposed lessee was he inquired about his business and whether he was the man who ran a pawnshop, and when he was identified as such, defendant objected to a man of that type, and further objected on the ground that he might not be financially able, and also on the further ground that he was a Jew, and that defendant did not want to enter into the lease with him on that account. While there was sufficient evidence of the proposed lessee's financial ability, there was also evidence that for the year 1925, he paid a personal tax of only $6.76. However, it is immaterial what basis there was for defendant rejecting the proposed lessee if in fact he had reserved the right to accept none other than a lessee personally agreeable to him. Plaintiff's evidence tended to contradict this feature of the testimony of defendant and it is quite plain that there was an issue of fact upon this subject. It is equally plain that if the jury should accept de-

fendant's version of the facts then there would be a complete defense to the cause of action. If defendant's evidence be true, plaintiff's right to a commission was subject to the condition and contingency of his procurement of a person *acceptable*, and unless such condition is met there was no obligation on the part of defendant, and no requirement that would compel him, to accept any proposed lessee. If this condition was a part of the contract it was incumbent upon plaintiff to meet it before he could recover. As stated in the case of Hughes & Thurman v. Dodd, 164 Mo. App., l. c. 459:

"It is elementary law that where a contract is made upon a certain named condition, a party seeking to recover under such contract must bring himself within such condition. This rule of law applies to a broker's contracts as well as to others."

Under the facts and circumstances in this case defendant was entitled to have his version of the contract submitted to the jury. This was as much a material matter of defense, from his standpoint, as any other condition of the contract, and the refusal of the instruction deprived defendant of the right to have this particular defense submitted to the jury. He was entitled to have this specific aspect of the case presented for consideration. Plaintiff contended that the contract was one thing and defendant contended that it was another. To deny the submission of defendant's contention to the jury was to deprive him of the right of a legal defense. The following cases support appellant's contention and declare the law as we have stated it upon this point. [Slayback v. Wetzel, 146 Mo. App. 171, 186; Westerman v. Peer Investment Co., 197 Mo. App. 279, 284; Jennings v. Overholt, 186 Mo. App. 505; Bowen v. Buckner, 183 S. W. 704; Butsch v. Implement Co., 197 Mo. App. 387; Blaine v. Knapp & Co., 140 Mo. 241.]

It is quite true, as contended by respondent, that an instruction is erroneous and should be rejected where it singles out a specific portion of evidence, comments upon it, and gives undue prominence to it, but that is not the situation in this case. It is immaterial whether there is little or much evidence upon an issue in the case, and the prime question is whether defendant has been denied the submission of an issue, or a phase of his defense, which he was entitled to have presented to the jury. We hold that defendant was entitled to have the instruction given as requested and that its rejection was erroneous. The following further authorities may be consulted in support of the proposition that a party litigant is entitled to have the different aspects of the case presented in instructions; and that it is erroneous to refuse an instruction submitting a defense supported by evidence, notwithstanding plaintiff's evidence to the contrary. [Root v. Railroad, 237 Mo. 640, 651; Jennings v. Cooper, 230 S. W. 325, 328; Smith v. Southern, 210 Mo.

App. 288, 292; Low v. Paddock, 220 S. W. 969, 971; Warehouse & Stg. Co. v. Toomey, 181 Mo. App. 64, 70; Vaughn v. May, 217 Mo. App. 613, 628-9.]

We find no other error in the case, but in view of a possible retrial we note appellant's further points. He contends that the court erred in refusing instruction D 9. This instruction consisted of abstract propositions of law, and no attempt whatever was made to apply it to any phase of the facts or issues in the case. It is further noted that the declarations of this instruction are embodied in instruction D 2 which was given in behalf of defendant. There was no error in its refusal.

Appellant further contends that the court erred in rejecting other testimony. Plaintiff testified that defendant stated to him that no one else had offered to lease the property, that everyone with whom he talked desired to buy it, and that there was no other agent on the case. Defendant offered to prove that he had discussed lease propositions with other agents and had other prospects long prior to his meeting with plaintiff. Defendant testified that in his conversation with plaintiff there was nothing said about any prior negotiations, and offered to prove by other agents that they had attempted to find lessees and purchasers for the property. This offer was properly rejected. It is not perceived how this evidence would prove or tend to prove that defendant did not make the statement attributed to him by plaintiff. It is no impeachment or denial of the statement proved to show by others that he had in fact been negotiating with them. The sole question involved was whether or not the statement was made by defendant, and plaintiff's evidence upon this subject could be impeached only by the defendant or by someone who heard the conversation. [40 Cyc. 2563.] It was immaterial how many attempts, if any, defendant had made to lease the property, and proof of this fact would not be legal evidence to support his denial of the statement testified to by plaintiff. Besides this, the whole controversy is upon matter immaterial to the terms and conditions of the contract between plaintiff and defendant.

Appellant further contends that the court erred in refusing to permit him to prove by the county tax records the valuation which Brenner, the prospective lessee, placed upon his personal property during the years 1925, 1926, 1927 and 1928. Defendant was permitted, over the objection of plaintiff, to offer evidence from the books of the collector's office showing the amount of tax paid by Brenner for the years 1925, 1926, and 1927. The transaction in question occurred in 1925. The defendant attempted to show what tax Brenner paid in 1928, in that it would have a bearing upon the question of the financial ability of the proposed lessee. The court ruled that the question was as to conditions in 1925, and not in 1928, the latter year being too remote. There was no error in the

ruling of the court upon this subject. It appears that defendant was given liberal latitude in the proof received.

Witness Brenner testified without objection that he was able within a period of five years to erect a one hundred thousand dollar building. He was then asked the question: "Did you have money enough?" An objection was made to this question which was overruled, but the question was never answered and the inquiry proceeded along other lines. We fail to see any error or any hurt to defendant on account of this procedure.

The evidence showed that one William Fishman was to be associated with·Brenner, the prospective lessee, in financing the lease. Brenner was asked to state the net worth of Fishman in 1925. Objection was made by defendant, overruled, and the court instructed the witness to answer if he knew. The answer was: "William Fishman, to my knowledge, was worth in his own right, about a quarter of a million dollars." A motion to strike out the answer was overruled. Appellant complains of this testimony as being purely a conclusion of the witness and an invasion of the province of the jury. It is clear that the testimony purported to be based upon the knowledge of the witness and there was no error in receiving it.

Appellant further complains that the court erred in refusing to permit witness Brenner to testify that he did not know what defendant or his attorney would require with reference to liability insurance, as well as to other usual requirements in a ninety-nine year lease. Witness testified that there had been no discussion with him about liability insurance, but that he expected to pay insurance. The question to which an objection was sustained was this: "You didn't know what Mr. Daniels or his attorney would require in that particular?" Defendant was contending that he was entitled to show by this witness that there were many usual features of a ninety-nine year lease which had not yet been agreed· upon. The evidence shows that the prospective lessee had agreed to all requirements made and was requesting a delivery of the lease. No other or further requirements or conditions were ever presented to him. This admission was made in the record. In passing upon the objection and the method of examination the court said: "What difference does it make if there was something else your man never presented and asked him to agree to? If he agreed to everything presented to him, then the plaintiff had done everything he could do on his contract." And the trial court further remarked: "If you afterwards present any testimony that any of those terms you are now interrogating the witness about were presented to the witness and that he refused to agree to them the court will allow you to recall the witness and examine him on them." Under these conditions there was no error in the ruling of the court.

One of plaintiff's witnesses and associates in attempting to procure a lessee was asked to state his "understanding" as to the procedure to be had in reference to drawing the lease, the different features of it, its submission for approval, etc. The court sustained the objection and we think properly because, as stated by the court, the facts were before the jury as to what constituted the agreement. It was not proper for the witness to state what he "understood" about the procedure under the agreement.

Finally, it is urged that the court erred in refusing to permit one of plaintiff's witnesses, who was associated with plaintiff, to testify to what he was going to do if his client refused to meet all of the terms of the proposed lease. The court sustained the objection as to what he was going to do. It was neither competent nor material. We repeat again that the evidence shows that the prospective lessee never refused to agree, but at all times did agree to each and all of the terms proposed and to every condition submitted by the defendant. There is no merit in the point.

The only material error noted in the trial and submission of this case was in the refusal of defendant's instruction D5, as indicated above, and it results that for such error the judgment should be reversed and the case remanded. The Commissioner so recommends. *Barnett, C.*, concurs.

PER CURIAM:—The foregoing opinion by BOYER, C., is adopted as the opinion of the court. The judgment is reversed and the case remanded. All concur, except *Trimble, P. J.*, absent.