OSCAR SONTAG, Respondent, v. WALDEMAR UDE, Appellant.

St. Louis Court of Appeals. Submitted on Briefs May 3, 1915. Opinion Filed June 8, 1915.

1. **PHYSICIANS AND SURGEONS: Malpractice: Liability.** A physician cannot be held for an honest error of judgment, a mistake in matters of doubt, or an uncertainty, and where he uses a recognized system of treatment, he is not negligent.

2. ———: ———: **Sufficiency of Evidence.** In an action against a surgeon for the death of a child, alleged to have been caused by defendant's negligence in inserting a rubber drainage tube in an incision made in the child's body in such a manner that it could, and did, slip into his body, and in failing to discover that the tube had slipped into his body and in failing to remove the same, where the evidence showed that defendant inserted a rubber tube in an incision in the child's body made by him, leaving it unsecured, so that it slipped inside the body, and that the tube was allowed to remain there for some time, *held* that it was a question for the jury whether defendant was guilty of the negligence charged, and, if so, whether such negligence was the proximate cause of the child's death.

3. ———: ———: **Death by Wrongful Act: Cause of Death: Evidence.** In an action against a surgeon for the death of a child, alleged to have been caused by defendant's negligence in inserting a rubber drainage tube in an incision made in the child's body in such a manner that it could, and did, slip into his body, and in failing to discover that the tube had slipped into his body and in failing to remove the same, evidence that, before the tube dropped into the child's body, he showed no indications of suffering from a fatal malady, and that, immediately thereafter, he commenced to waste away, and finally

died, justified an inference that the proximate cause of death was the dropping of the tube into the body, and it was not essential that expert evidence of that fact be adduced.

4. ————: **Duty.** A physician, holding himself out as such, and undertaking the care and treatment of a baby for pay, owes the baby and its parent careful and skillful treatment.

5. ————: **Malpractice: Instructions.** In an action against a surgeon for the death of a child, alleged to have been caused by defendant's negligence in inserting a rubber drainage tube in an incision made in the child's body in such a manner that it could, and did, slip into his body, and in failing to discover that the tube has slipped into his body and in failing to remove the same, *held* that an instruction given for plaintiff was not vulnerable to the objections that it assumed negligence, placed the burden on defendant to show that he was not negligent, submitted matters not supported by the evidence, or submitted issues outside of the scope of the pleadings; *held, further,* that plaintiff's instructions were not inconsistent with each other.

6. **INSTRUCTIONS: Waiver of Generality.** The generality of an instruction is an error of nondirection, not of misdirection, and should be corrected by instructions requested by the adverse party.

7. ————: **Refusal: Point Covered by Other Instructions.** It is not error to refuse an instruction charging on a point covered by the instructions which are given.

8. ————: **Cure by Other Instructions.** Objectionable features of instructions may be cured by the instructions given on behalf of the objecting party.

9. **PHYSICIANS AND SURGEONS: Malpractice: Pleading: Sufficiency of Petition.** In an action against a surgeon for the death of a child, the petition alleged that, while defendant was treating plaintiff's infant child, he performed an operation and made an incision in the child's body; that thereafter he opened this incision and inserted a tube therein for the purpose of draining the diseased part of the infant's body; that he so negligently and unskillfully inserted the tube that it could and did slip inside the body; that he thereafter discovered that it was lost, and might, by the exercise of ordinary care, have ascertained that it had slipped into the body, but that he negligently and unskillfully failed to locate and discover it and remove it; that, by reason of the tube remaining in his body, the child was made sick and grew worse, until some time later, when defendant discovered that the tube was in the body and operated on the infant; and that, by reason of these things, the infant continued to grow worse until he died. Defendant attacked the

petition, on appeal, on the ground that it was fatally defective, in that it did not allege specific acts of negligence—did not set out. how and in what manner the tube was negligently inserted, nor specifically state what means, treatment or operation could have been used or performed to discover the tube in the body. *Held*, that the petition was sufficient to support a judgment for plaintiff, and that, if it was defective in the particulars claimed by defendant, such defects could not be reached by demurrer.

Appeal from St. Louis . City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

AFFIRMED.

*Morton Jourdan* for appellant.

(1) (*a*) A physician cannot be held for an honest error of judgment, a mistake in matters of doubt, or an uncertainty. Gore v. Brockman, 138 Mo. App. 231; Hales v. Raines, 146 Mo. App. 232, 245. (*b*) Where a physician uses a recognized system of treatment he is not negligent. McClarin v. Grenzfelder, 147 Mo. App. 478, 488. (2) Plaintiff's first instruction is error, because—(*a*) It places too great a burden upon defendant. Spain v. Burch, 169 Mo. App. 94. (*b*) It is too general; it allows the jury to speculate upon the negligence of defendant; it sets out no specific acts of negligence. (*c*) It assumes that defendant was negligent and places the burden of proof upon him to show that he was not. Van Hooser v. Berghoff, 90 Mo. 487. (*d*) There was no evidence submitted to the jury upon which to base negligence in not discovering the tube inside the body of the child. (*e*) It allows the jury to speculate upon and find defendant negligent with respect to an operation on the child, in regard to which there is no allegation in the petition. (3) Plaintiff's second instruction is error, because—(*a*) It is inconsistent with and contradicts the first instruction. (*b*) It is too general; it permits a less amount of proof than a preponderance of evidence as a basis for plaintiff's

recovery. (4) Plaintiff's third instruction is error, because—Defendant does not promise that he will use his best judgment; he merely promises to use his honest judgment and to use the skill, care and prudence of an ordinarily capable doctor. Gore v. Brockman, 138 Mo. App. 231. (5) The court erred in refusing defendant's instruction numbered 3, because it is proper and should have been given.

*Otto F. Karbe* and *S. C. Rogers* for respondent.

(1) Appellant's demurrer to respondent's evidence was properly overruled. Black v. Railroad, 162 Mo. App. 98; McRae v. Railroad, 125 Mo. App. 569; DeMaet v. Storage, Packing & Moving Co., 231 Mo. 619; MacDonald v. Railroad, 219 Mo. 483; Sharp v. Railroad, 213 Mo. 532; Fields v. Railroad, 169 Mo. App. 633; Sang v. St. Louis, 171 S. W. 347. (2) Plaintiff's first instruction correctly declared the law and hence it was not error in giving it. (3) Plaintiff's second instruction was correctly given. Wheeler v. Bowles, 163 Mo. 398. (4) Plaintiff's third instruction is correct and has been approved. Wheeler v. Bowles, 163 Mo. 398. (5) The court correctly and thoroughly instructed the jury. Johnson v. Traction Company, 176 Mo. App. 174.

REYNOLDS, P. J.—The action in this case is by the father against the defendant for damages for the death of his son, an infant about thirteen months of age at the time of his death, the mother dead.

The petition upon which the case was tried, averring that defendant is a physician and surgeon and as such engaged in the practice of medicine and surgery, avers that the infant son of plaintiff, then about ten months old, became sick about February 14, 1911, with bronchial pneumonia, and plaintiff employed defend-

ant to attend and treat the infant and to render him such medical and surgical aid, treatment and assistance as might become necessary during his sickness, and that defendant, in consideration of a reasonable compensation to be paid him, engaged and undertook to treat and attend to the infant, who was placed under his care and treatment; that while defendant was engaged in attending and treating the infant he performed an operation and caused an incision to be made in the region of the fourth and fifth ribs, under and a little behind the left arm of the infant; that thereafter and on April 13, 1911, defendant opened this incision in the body of the infant and inserted a tube about five inches long through the incision for the purpose of draining the diseased part of the body of the infant. It is charged that defendant so carelessly, negligently, improperly and unskillfully inserted this tube in the incision that it could, would and did slip or fall into the inside of the body of the infant; that thereafter and on this 13th of April, defendant discovered that the tube was lost and that defendant might, by the exercise of ordinary care, have ascertained that the tube had slipped into the inside of the body of the infant and was in his body, but, it is charged, that defendant so carelessly and negligently, improperly and unskillfully failed to locate and discover the tube in the body of the infant and to remove the same therefrom, and that by reason of the tube being and remaining in the body of the infant, he was made sick, suffered great pain and grew worse and weaker until about April 30, 1911, when defendant discovered that the tube was then in the body of the infant and defendant then operated on him and made an incision one and one-half inches long in the side of the body of the infant and removed three-fourths of an inch of one of his ribs and located and removed the tube, and charging that by reason of all of these things the infant continued to grow worse and weaker until May 7, 1911, when, it is averred, he died.

Charging that the death of the infant was directly caused and brought about by reason of the carelessness, negligence, unskillfulness and disregard of duty of and by defendant, as above set out, in so placing the tube in the incision in the body of the infant that it could, would and did slip into the inside of the body of the infant, and in failing to discover, locate and remove the tube within a reasonable time after it had slipped or fallen inside the body of the infant, plaintiff alleges he has been damaged in the sum of $10,000, for which he demands judgment.

A demurrer was interposed to this. That being overruled, defendant filed an answer, which, admitting that he was a physician and surgeon, denied all other allegations in the petition.

At the trial before the court and jury, there was a verdict in favor of plaintiff in the sum of $5000. On a motion for new trial being filed the court announced that he would sustain it unless plaintiff remitted $1500 from the verdict. The remittitur having been made, the motion for new trial was overruled as was also the motion in arrest of judgment which had been filed by defendant. Judgment following for $3500, defendant has duly appealed to this court.

There was evidence introduced by plaintiff tending to prove that plaintiff himself being sick, called in defendant to attend on him. While defendant was attending upon the father, the infant was taken sick with what was pronounced bronchial pneumonia. Defendant, deeming it necessary to remove an accumulation of matter which had formed on the inside of the body of the infant, assisted by two other surgeons whom he called with the assent of plaintiff, made an incision rather under the arm and toward the back of the infant. This was done March 6th at a hospital. The child was taken home March 15th and was there under the care of defendant, who from time to time inserted a rubber tube into the wond for the purpose of drain-

ing it. It appears that defendant inserting a tube "anchored" it by sticking a safety pin in the tube and through the skin of the child. The plaintiff protesting against this, the pinning to the skin was discontinued. Four or five days after the baby had been taken home his fever disappeared—left him—he was getting along nicely—"getting along fine, getting along nicely," said defendant to the father. He "played around," took nourishment, and was gaining flesh; was "a stout little baby," said the nurse, before and after the first operation and until shortly after April 13th. About April 13th defendant placed a rubber tube in the wound, not securing it. That night he was at plaintiff's home, took supper with him and after supper went upstairs where the baby was, and when he came down told plaintiff that the tube had dropped into the baby and that they would have to operate right away and get the tube out. Plaintiff doubting this, they searched all over the premises in an effort to find the tube, as the baby had been all over the house that day, up and down stairs. Plaintiff insisted on having the baby examined under X-Rays. Defendant, while insisting that the tube was inside the baby's body, said rubber would not show under X-Rays and that the tube might be lying back of a rib and would not show. On April 16th defendant, with the assistance of the same two surgeons and physicians who had assisted in the first operation, again operated on the infant and removed part of a rib but did not find the tube, defendant telling plaintiff that they had made a larger opening, had taken out a portion of the rib, and if there was any pus there it was bound to come out; that the operation "didn't hurt the baby;" that it was all right and they were sure that the tube was not inside. The infant continuing to grow worse from this time on, and plaintiff insisting on the use of the X-Ray, that was finally resorted to and with it the tube was located and removed. This occurred April 29th. The baby died May 7th, following. This was practi-

cally the testimony for plaintiff and of the nurse. The X-Ray plates and the tube which had been taken from the cavity of the body of the baby were before the jury, the plates showing the rubber tube lodged inside, on the latter a lot of offensive matter which had accumulated on and around it. The wound itself had become discolored and the odor from it had become very offensive. It was in evidence that while the baby had apparently completely recovered from the effect of the first operation, he began to fail after April 13th, when the tube fell in, and gradually grew worse, becoming mere skin and bones; took no nourishment; had a high fever, and, as the father testified, "lay like a stone," until he died.

Defendant introduced no testimony but rested on his demurrer.

While the learned counsel for appellant makes nine assignments of error, his brief and argument are confined to five propositions.

First, that a physician cannot be held for an honest error of judgment, a mistake in matters of doubt, or an uncertainty, and where he uses a recognized system of treatment, he is not negligent. These propositions are undoubtedly correct. The difficulty, however, is that there is no evidence here on the part of defendant tending to show an honest error of judgment or a mistake in matters of doubt, or an uncertainty, or that defendant used a recognized system of treatment. The father, plaintiff here, and a nurse, who had had charge of the infant from the time of its first sickness until its death, gave all the testimony in the case, apart from that relating to the taking of the X-Ray picture, and we have given a very brief sketch of their testimony. Defendant introduced no testimony. So that it was on the testimony given by the plaintiff and the nurse that the jury were to determine whether the defendant acted in a negligent, or skillful and proper manner. With that testimony before it, although unaided by

professional expert evidence, the jury, as intelligent
men, were competent to say whether the conduct of de-
fendant was proper. The negligence charged is the in-
sertion of a rubber tube in the wound and leaving it
there unsecured, so that it slipped inside of the body;
that is the primary negligence charged; then follows
the charge that this tube was allowed to remain in the
cavity so long that death resulted when it was finally
removed. Whether these were acts of negligence, was
for the jury. Whether these acts were the proximate
cause of death was within the competency and intelli-
gence of the jury to determine. No professional—no
opinion—evidence was necessary, so far as plaintiff's
case was concerned. If these matters were not the
cause, if defendant's conduct was that of a reasonably
skillful surgeon and physician, it was for him to have
put in his proof. The facts in evidence, if believed by
the jury, were of sufficient probative force to warrant
the jury in holding defendant liable for the negligence
charged, those facts undisputed. On them the jury
had a right to infer that the immediate and proximate
cause of death was the slipping into the open wound,
and then into the cavity of the chest or body, of this
unsecured rubber tube, and then leaving it there for
the time shown.

It is said by the Kansas City Court of Appeals in
Fields v. Metropolitan St. Ry. Co., 169 Mo. App. 624,
1. c. 633, 155 S. W. 845, that where the evidence shows
that before an injury the party injured was a healthy,
strong person and that a short time after the accident
he began to exhibit signs of nervous shock and of
severe internal injuries, that the jury was entitled to
draw the conclusion that the negligence of the defend-
ant had transformed a healthy person into a hopeless
invalid. That, says the court, is but a statement of a
proposition so well established, that the jury had a
right to draw all reasonable inference and conclusions

from the testimony before them and apply it to the facts in the case.

In the case at bar we have an infant, who when taken in hand by the physician was suffering with what is said to have been bronchial pneumonia. The defendant operated on him and treated him for that and according to the defendant the infant was in a fair way of recovering his normal condition. In the further course of that treatment, however, the physician inserted a rubber tube, without securing it, and it slipped into the cavity of the body, lodged there and remained there until removed in the course of a third operation upon the body of the child and when removed was found to be coated over with foreign matter. During all the time of its presence, in fact from the time it dropped from sight, and, as subsequently proved, fell inside the body of the infant, the latter wasted away until he died. We do not believe that on such facts any jury would say that the acts of defendant did not constitute negligence, no matter how many expert professional gentlemen might have testified to the contrary. The defendant held himself out as a physician, undertook, for pay, the care and treatment of this little baby, and he owed it and its father careful and skilful treatment.

The demurrer of the defendant to the evidence was properly overruled.

Learned counsel for appellant attack the instructions given at the instance of plaintiff, claiming, among other things, that the first places too great a burden upon defendant, assumes negligence and places the burden of proof upon him to show that he was not, it being claimed that there was no evidence submitted to the jury upon which to base negligence in not discovering the tube inside the body of the child, and that the instruction allows the jury to speculate upon and find defendant negligent with respect to an operation upon the child in regard to which there is no allegation

in the petition. We do not think this instruction is susceptible of this criticism. It is a very long instruction and it is unnecessary to set it out, but we hold it was a fair presentation of the law of the case, as far as it went.

It is further urged that the second instruction given at the instance of plaintiff is erroneous as inconsistent with and contradictory to the first, and is too general, in that it permits a less amount of proof than a preponderance of evidence as a basis for plaintiff's recovery. We see no inconsistency between these instructions. If it was too general, that was an error of nondirection, not of misdirection, and should have been corrected by the instructions asked on behalf of defendant. Furthermore, the matter of preponderance of evidence was fully covered by an instruction given at the instance of defendant hereafter set out.

The third instruction, also challenged, and in fact the second instruction and part of the first given at the instance of plaintiff, are practically reproductions of the instructions given in Wheeler v. Bowles, 163 Mo. 398, 63 S. W. 675, as a comparison of these instructions with those given in that case shows. Of the instructions in Wheeler v. Bowles our Supreme Court said that it had "rarely found a fairer set of instructions in a negligence case."

At the instance of defendant the court gave instructions numbered 5, 6, 7 and 8, which in connection with the instructions given by the court for plaintiff, we think presented the case to the jury in a very fair way. This is particularly so of instruction numbered 7, given at the instance of defendant, which was to the effect that the plaintiff must show "by a preponderance of the testimony, that is, by the greater weight of the testimony to your reasonable satisfaction, that the death of the child was due to the leaving of the drainage tube in the body and the necessity for the other operations by reason of so leaving of said drainage

tube in the body, and not from any other cause; and if you find and believe from the testimony that the child died from any other cause than those mentioned in this instruction, your verdict will be for the defendant.''

The court further told the jury in another instruction given (No. 8) at the instance of defendant, that defendant was not ''responsible in damages to plaintiff for errors in judgment, or mere mistakes in matters of doubt or uncertainty, provided that he exercised and used, in the operation performed upon the child, and at which he assisted, such reasonable skill and care as is ordinarily exercised by those who practice under like conditions; and, if defendant did exercise such care and skill in connection with the use of the drainage tube mentioned in the petition, then plaintiff cannot recover against the defendant, and the burden is on the plaintiff, before he is entitled to recover against the defendant, to establish by the greater weight of the evidence that the defendant did not exercise such care and skill in the use of said drainage tube.'' We think that these instructions given at the instance of defendant, in connection with those given at the instance of plaintiff, cured the very points of objection defendant makes to the instructions given at the instance of plaintiff. With these instructions before it, which presumably, as they were asked by defendant, must be held to be based upon evidence in the case, we fail to find any error in the matter of instructions, or in the verdict.

The petition is attacked as fatally defective in that it does not allege specific grounds—acts—of negligence; does not set out how and in what manner the tube was negligently inserted in the body of the child, nor specifically state what means, treatment or operation could have been used or performed to discover the tube in the body. These are not defects—if such— which can be reached by demurrer. The petition is amply sufficient to sustain the verdict and judgment.

This covers all the points that are argued in the brief of learned counsel for appellant. We confine our attention to their consideration.

Finding no reversible error, the judgment of the circuit court should be and is affirmed. *Nortoni* and *Allen, JJ.,* concur.