## J. F. DIETZ, Respondent, v. E. D. NIX, JOHN C. BARDWELL and W. L. WRIGHT, Appellants.

St. Louis Court of Appeals.   Opinion Filed December 2, 1919.

1. **CUSTOMS**: Peladiing: Evidence: Custom Not Pleaded, Evidence Thereof Inadmissible. In an action where the petition charged that defendants agreed to reimburse plaintiff for any tools which he might lose while drilling, etc., and plaintiff adduced no evidence tending to show any express contract on defendants' part so to do, but sought to sustain such averment by proof of a custom and that such custom entered into and became a part of the contract, *held* that evidence of the existence of the so-called custom was inadmissible since the custom was not pleaded.

2. **EVIDENCE**: Self-Serving Declarations Not Admissible. In an action to recover for drilling an oil well, letters written by plaintiff reciting his version of the transactions had by him with defendants, with assertions as to his having performed on his part, and to his conduct and fairness in the premises, *held* such letters were self-serving declarations and ought to have been rejected on defendants' objections on this ground.

3. **TRIAL PRACTICE**: Evidence: Uninvited Error in Admission Not Cured by Admitting Rebutting Evidence. In an action to recover for drilling an oil well, where the plaintiff's self-serving letters were improperly admitted in evidence over defendants' objections, and defendants subsequently put in evidence reply letters written by one of the defendants, the error thereby in admitting plaintiff's two letters was not cured or rendered harmless.

4. ———: ———: Error in Admitting Self-Serving Declarations Not Cured by Failure to Object to Others Not of Same Tenor. In an action to recover for drilling an oil well, where plaintiff, in rebuttal, introduced a letter written by him to one of the defendants and defendants made no objection to the introduction of such letter, and such letter was not of the same tenor as those improperly admitted and does not cover everything contained in the other two letters in the nature of self-serving declarations, *held* the admission of the two self-serving letters was highly prejudicial, and that the error was not cured or rendered harmless by reason of the fact that defendants omitted to object to the introduction of such rebuttal letter.

Appeal from the Circuit Court of the City of St. Louis.—*Hon. Leo S. Rassieur,* Judge.

REVERSED AND REMANDED.

*Elliot W. Major* and *Jos. Barton,* for appellants.

It is submitted that it was prejudical error as against appellants to admit evidence of a special custom in boring wells in Oklahoma. In this case no issue concerning such custom was raised by the pleadings. A special custom must be pleaded where such custom is relied upon to take the case out of the general rules of law. And where it is not shown (and it was not in this case) that either party, when the contract was made, relied pon the custom or usage offered to be proven, evidence of it should be refused. Hayden v. Grillo, 42 Mo. App. 1; McCallister v. Barnes, 35 Mo. App. 668. Customs and usages must be strictly construed. A custom cannot be admitted to vary a general and well-settled rule of law. Nor will the parties be held to have entered into a contract with reference to an unreasonable custom. A person entering into a contract is bound by the custom of a particular business, unless it is so general as to furnish a presumption of knowledge of it on his part, or unless it is proved that he was acquainted with it. Martin v. Mill Co., 49 Mo. App. 23. A custom to be good must be general, uniform and notorious, and to be binding on the parties to a transaction must be directly known to them, or be so universal and general in its charcter that knowledge of it may well be presumed; and evidence which does not tend to establish an open, uniform and notorious rule, but simply consists of the declarations of witnesses as to what their individual opinions are, and the obligations they should have deemed resting upon them in certain circumstances, is illegal and should be excluded. . . . Evidence of custom is never admitted to oppose or alter a general principle or rule,

so as to make the rights and liabilites of the parties other than they are at law. S. W. Freight, etc., Co. v. Stannard, 44 Mo. 71. A local custom must be pleaded not only, but must be clearly proven. It has been repeatedly held that a custom to be binding upon the parties must be general, uniform, certain and generally known and in general use, "so universal and general in its character that knowledge of it may be presumed" (S. W. Freight & Cotton Co. v. Stannard, 44 Mo. 82). Testimony as to alleged custom cannot be permitted to vary the established rule of law that the measure of damage for the breach of a contract by a purchaser is the difference between the price and the market value of the property at the time and place of delivery. Int. Harvester Co. v. Lampher, 204 S. W. 1118.

*Virgil Rule* and *R. P. & C. B. Williams* for respondent.

(1) A general custom pertaining to a particular trade or business enters into and forms a part of contract made with reference to that trade or business, and it is not necessary to plead such custom, but the court will take judicial notice of it. Long v. Armsby, 43 Mo. App. 253; Stover v. City of Springfield, 167 Mo. App. 328; 17 Corpus Juris, 516, 568, and cases cited; 16 Cyc, 878, 880, and cases cited; 1 Chamberlyne on Evidence, sec. 758, and authorities cited; also sec. 2743; Cameron v. Real Est. Co., 76 Mo. App. 371. (2) The court will take judicial notice of general usages and customs relating to a particular trade or business, although the community, in which the custom is general be of limited extent. Long v. Armsby, 43 Mo. App. 253; 16 Cyc, 879, 880, and cases cited; Heyworth v. Miller, 174 Mo. 171, 185; 1 Chamberlyne on Evidence, sec. 758. (3) If it was error to admit in evidence the letters written by plaintiff to defendant Nix set out on pages 45 to 47 of appellants' abstract, it was harmless error, and did not prejudice the substantial rights of de-

fendants on the merits for the reason that plaintiff's case was abundantly proved without such letters, and defendants were permitted to put in evidence Nix's reply to such letters, thereby curing the error, if any. See respondent's additional abstract, where such letters are set out: Latham v. Telegram Co., 239 Mo. 606, 620, 621; Shinn v. United Rys. Co., 248 Mo. 173, 182; Peny v. Van Matre, 176 Mo. App. 100; Putnam v. Boyer, 173 Mo. App. 394; Statutes 1909, sec. 1850. (4) For another and greater reason, defendants cannot complain of the admission of the letters referred to in point 3, because Plaintiff's Exhibit "C," a letter dated Oct. 6, 1914, from plaintiff to Nix, which contains by repetition, all of the matters complained of in the other two letters, was admitted without objection. The rule being that one cannot complain of the admission of evidence over his objection, where evidence of the same tenor has been admitted without his objection. Laughlin v. Kansas City, 205 S. W. (Mo.) 3, 8; Masonic Mutual v. Lackland, 97 Mo. 137; McPherson v. Andes, 75 Mo. App. 204.

ALLEN, J.—The petition herein is in four counts. The first count alleges that plaintiff is a resident of the State of Oklahoma, that the defendants are residents of the City of St. Louis, and that prior to July 13, 1914, defendants were engaged in prospecting for oil in Oklahoma. It is then averred that on July 3, 1914, plaintiff and defendants entered into an express contract whereby plaintiff agreed to drill a certain well for defendants in the county of Rogers, State of Oklahoma, to a depth sufficient to reach what is commonly known as the "shallow sand" or until notified by defendants to cease boring. It is alleged that defendants agreed to pay plaintiff one dollar per foot for such drilling; that plaintiff entered upon the performance of the contract, furnished the necessary labor and material therefor, and drilled said well to

a depth of 868 feet, when he was notified by defendants to cease drilling, which instructions he obeyed. Averring full performance of the contract by plaintiff, and defendants' refusal to pay the amount due plaintiff thereunder, judgment is prayed for the sum of $868, with interest and costs.

The second count is in *quantum meruit* to recover the reasonable value of plaintiff's services in drilling the well mentioned in the first count to a depth of 868 feet; judgment being prayed for $868.

For a further cause of action, and a third count of the petition, plaintiff alleges that on or about August 10, 1914, after he had drilled the said well to a depth of 868 feet, the defendants again employed plaintiff to resume the drilling thereof, and agreed to pay plaintiff therefor at the rate $20 per day, "and further agreed to pay plaintiff the reasonable value of any tools of plaintiff that might be lost, damaged or destroyed while plaintiff was engaged in drilling said well." It is alleged that plaintiff entered upon the performance of this contract, furnished the necessary labor and tools therefor, and continued drilling the well for a period of fourteen days; that "in the operation of drilling said well, in the usual course, and while in the exercise of ordinary care and caution," plaintiff lost certain tools, enumerated in the petition, alleged to have been of the reasonable value of $312.15. And it is alleged that plaintiff faithfully performed the contract on his part, but that defendants refused to pay him the amount due thereon. Judgment is prayed on this count for $592.15, with interest and costs.

The fourth count proceeds in *quantum meruit* for the reasonable value of the services rendered by plaintiff for the fourteen days work mentioned in the third count and for the reasonable value of the tools alleged to have been lost while performing such work.

The answer to the first and second counts admits that during the summer of 1914 defendants entered into

an oral contract with plaintiff by which plaintiff agreed to drill for them a certain well in Rogers County Oklahoma: It is alleged, however, that by the terms of the contract plaintiff undertook and agreed to drill said well to a depth of 1250 feet, with the right and option on the part of defendants to terminate the contract and the further drilling of the well at any time before that depth had been reached; that in the contract with plaintiff it was agreed and understood that plaintiff was to furnish all of the necessary machinery, tools, etc., including water and fuel, necessary for the said work, if plaintiff would drill the well to the said depth of 1250 feet at the price of one dollar per foot. And it is averred that plaintiff began drilling under the contract and drilled the well to a depth of between 800 and 900 feet, the exact depth being unknown to defendants, but that plaintiff thereupon wrongfully, in violation of his contract, and against defendants' instructions, ceased drilling and refused to drill further or to further carry out his contract unless he was paid by defendant a greater compensation than that agreed upon, or, as an alternative, unless defendants furnished him, at their expense, with water and fuel necessary for the work; that in order to induce plaintiff to carry out his contract with them, and on his express promise to resume drilling, defendants furnished him with the fuel and water necessary therefor; that thereafter plaintiff nevertheless wrongfully faild and refused to complete the drilling of said well, quit and abanded the same, over defendants' protest, before the depth of 1250 feet had been reached.

Further answering defendants deny that plaintiff performed the terms and conditions of the contract on his part, to be performed by him, deny that they are indebted to plaintiff on any account whatsoever, but aver that by reason of plaintiff's "said failures and defaults" they are discharged from any liability to him on account of the drilling of the well.

By way of counterclaim, the amounts alleged to have been paid out and expended by defendants in furnishing plaintiff with fuel and water are set out in the answer, totaling $171.75, for which sum defendants pray judgment against plaintiff.

The answers to the third and fourth counts are general denials.

The trial, before the court and a jury, resulted in a verdict for plaintiff on the first and third counts of the petition, for plaintiff on defendants' counterclaim, and for defendants on the second and fourth counts of the petition; the total amount of the verdict for plaintiff being $1617.30. Judgment followed accordingly, from which the defendants prosecute this appeal.

The evidence for plaintiff tends to establish the making of the original contract sued upon in the first count of the petition, i. e. tends to show that by that contract plaintiff was required to drill only through a certain sand, regarded as an oil bearing sand in that region and commonly known as the "shallow sand," at the rate of one dollar per foot; and that plaintiff reached this sand and drilled through it. Defendants' evidence, however, is to the effect that by this said oral contract plaintiff agreed to drill to a depth of 1250 feet, unless requested by defendants to stop at a shallower depth, at the price of one dollar per foot. It is conceded that under the original contract plaintiff was to furnish fuel and water for the drilling. After the well had been drilled to a depth of about 868 feet, i. e. through the "shallow sand," plaintiff ceased drilling for a time. He testified that he reported to defendants' agent, DeFord, that he had drilled through the "shallow sand," and that DeFord told him to do nothing further until further directions were received from defendants; and that after some delay it was agreed between plaintiff and DeFord, the latter acting for defendants, that plaintiff would be paid for further drilling at the rate of $20 per day, defendants to furnish the necessary fuel and water.

The testimony for defendants on the other hand tends to show that plaintiff, in violation of the contract which defendants assert that they made with him, refused to continue the drilling of the well after having reached a depth of about 868 feet, unless defendants would pay him a larger price per foot for the drilling or would furnish fuel and water therefor. And it is undisputed that defendants did furnish fuel and water for the subsequent drilling:

After thus resuming drilling, plaintiff drilled for a period of fourteen days when he lost a "bit" in the well. In undertaking to recover this bit, plaintiff lost his boring tools and was unable to recover them. Over defendants' objections, plaintiff was permitted to introduce testimony regarding a custom said to prevail in the oil fields in that locality to the effect that the producer, or owner of a well, becomes liable for the loss of the driller's tools where he contracted with the latter to do the drilling "by the day," without more. Plaintiff testified, in effect, that such custom obtained throughout the oil fields in the State of Oklahoma. And the testimony of plaintiff's witnesses tends to show the existence of such custom, at least, in the counties of Rogers and Tulsa, Oklahoma. There is testimony for defendants, however, that no such custom existed.

I.

Error is assigned to the action of the court in admitting, over defendants' objections, testimony in regard to the supposed custom mentioned above. It is unnecessary to refer to the evidence in detail in order to determine whether it tends to show the existence of a custom such as could properly have been shown in evidence had it been pleaded. One ground of appellants' objection to the introduction of this testimony was that plaintiff had not pleaded the existence of such custom in his petition. As shown above, the second count of the petition, *inter alia*, charged that the defendants agreed to reimburse plaintiff for any tools which he

might lose, while drilling at the rate of $20 per day. Plaintiff adduced no evidence tending to show any express contract on defendants' part to so reimburse plaintiff, but sought to sustain this averment of the petition by proof of a custom touching the matter,with respect to which, it is claimed, defendants are presumed to have contracted; in other words that such custom entered into and became an integral part of the alleged oral contract between the parties.

Under the circumstances we think that the point made that the evidence of the so-called custom was inadmissible, since the custom was not pleaded, is well taken. If any such custom existed, it was a local custom prevailing in the oil fields in that locality; and it was sought to show the existence thereof, not for the purpose of explaining the technical or special meaning of any word or term used in a contract, but to show what was the contract itself, upon the theory that the supposed custom entered into and became a part of the contract. And in order to show that the parties to the contract contracted with reference to a custom of this character, so ts to constitute the custom itself a part of the contract, the existence of the custom must be pleaded. [See Staroske v. Publishing Co., 235 Mo. 67, l. c. 75, 76, 138 S. W. 36; Porterfield v. American Surety Co. of New York (Mo. App.), 210 S. W. 119; Hayder v. Grillo's Admr., 42 Mo. App. 1, l. c. 546; Sherwood v. Savings Bank, 131 Iowa, 528; Consolidated Coal Co. v. Jones & Adams Co., 120 Ill. App. 139, l. c. 146, 147; Oriental Lumber Co. v. Blades Lumber Co., 130 Va. 730, l. c. 741; Hendricks v. Middlebrooks Co., 118 Ga. 131, l. c. 137, 138; Wallace v. Morgan et al., 23 Ind. 399.] The existence of such custom *vel non* is essenentially a question of fact, not of law, and should be both averred and proved like any other material fact in the case. [See Oriental Lbr. Co. v. Blades Lbr. Co., supra.] Defendants were entitled to be advised that plaintiff relied upon such custom to make out, in part, the contract set up in the second count of the petition.

And though the question as to the existence of this so-called custom was not an issue in the case, instructions as to the third count of the petition submitted the question to the jury, thus broadening the issues made by the pleadings.

## II.

Over defendants' objections plaintiff introduced in evidence two letters written by plaintiff to defendant Nix in September, 1914, after work had been stopped on the well by reason of the loss of plaintiff's tools, and while plaintiff was undertaking to obtain from defendants the money claimed to be due him. These letters recited plaintiff's version of the transactions had by him with defendants, through DeFord, with assertions as to his having performed on his part, and as to his conduct and fairness in the premises. These letters were manifestly self-serving declarations and ought to have been rejected on defendants' objections on this ground. [Hammond v. Beeson, 112 Mo. 190, 20 S. W. 474;   16 Cyc. 1202 et seq.]

The aforesaid letters having been admitted in evidence over defendants' objections, defendants subsequently put in evidence letters written by defendant Nix to plaintiff in reply to letters from plaintiff. It is contended by plaintiff, respondent here, that thereby the error, if any, in admitting plaintiff's two letters was cured or rendered harmless. To this we do not accede. It is true that participation in error by inviting it waives the right to subsequently complain of such error. "But the reason of the rule ought not to permit its application to a case where the losing party, as here, does not invite the error, but yields under protest to the theory of the trial court and thereafter tries, as best he may, to ameliorate his plight by administering an antidote to the poison already injected in the case to see if, peradventure, he may be able to render it innocuous." [Bailey v. Kansas City, 189 Mo. 503, l. c. 513, 87 S. W. 1182.  See, also, McKee v. Rudd, 222 Mo.

344, 121 S. W. 312; State v. Loving, 164 Mo. App. 82, l. c. 85 and cases cited, 168 S. W. 339.]

In rebuttal plaintiff's counsel introduced in evidence a letter written by plaintiff to defendant Nix—plaintiff's Exhibit "C"—to the introduction of which the record discloses no objection made by defendants. It is now contended that this letter "contains by repetition all of the matters complained of in the other two letters," and that its admission, without objection, cures or renders harmless the error in admitting plaintiff's other letters, for the reason, it is said, that one cannot complain of the admission of evidence over his objection where evidence of the same tenor has been admitted without objection, citing: Laughlin v. Kansas City,—Mo.—, 205 S. W. 3, l. c. 8; Masonic Mutual v. Lackland, 97 Mo. 137, 10 S. W. 895; McPherson v. Andes, 75 Mo. App. 204. It is unnecessary for us to say whether the doctrine sought to be invoked would find application to the exact situation here presented if plaintiff's Exhibit "C" were of such character as to constitute a repetition of all the self-serving statements contained in the two letters erroneously admitted. While all three of the letters are of the same general character, plaintiff's Exhibit "C" does not cover everything contained in the other two letters in the nature of self-serving declarations. We think that the admission of the last mentioned letters was highly prejudicial and that the error was not cured or rendered harmless by reason of the fact that defendants' counsel omitted to object to the instruction of plaintiff's Exhibit "C."

The judgment should accordingly be reversed and the cause remanded. It is so ordered.

*Reynolds, P. J.,* and *Becker, J.,* concur.