HAZEL TATE, HOLLIS TATE, CARL TATE and RALPH TATE, Minors, by GLENN RATCLIFF, their next friend, Respondents, v. WALTER G. TYZZER, Appellant.

St. Louis Court of Appeals. Opinion Filed October 4, 1921.

1. **PHYSICIANS AND SURGEONS:** Death by Wrongful Act: Malpractice: Sponge Left in Abdomen: Peritonitis: Several Causes: Evidence. In an action against a physician for damages for malpractice claimed to have resulted in death from peritonitis caused by leaving a sponge in the abdomen of deceased, even though the evidence discloses that peritonitis may be caused by other things or causes, yet that does not relieve defendant of liability where there was no condition shown in the particular case which caused the peritonitis other than the leaving of the sponge in the abdomen of the deceased.

2. ————: ————: ————: ————: ————: Question for the Jury. In an action against a physician for damages for malpractice, evidence by the husband of the deceased that he saw a sponge taken out of the abdomen during a second operation which had been left by a first, together with expert testimony that peritonitis could have been caused by the sponge, and that the patient died of peritonitis, *held* there was sufficient testimony to take the case to the jury.

3. **WITNESSES:** Inconsistent Testimony: Credibility. Considering a witness' station in life and the fact that he was subjected to cross-examination by a shrewd and careful lawyer and that the jury had the opportunity to see and observe his conduct while upon the stand, his demeanor and facial expressions being in evidence as well as his spoken testimony, *held,* taking his testimony as a whole, there were no particular inconsistencies in his statements such as would make it unworthy of belief.

(290)

4. **CUSTOMS: Pleading: Evidence: Custom Not Pleaded: Cannot be Relied Upon.** In an action against a physician for damages for malpractice claimed to have resulted in death from peritonitis caused by leaving a sponge in the abdomen of deceased, defendant cannot rely upon a special and local custom to take his case out of the general rules of law when no such custom was pleaded, nor was it shown that the deceased had any knowledge of its existence.

5. ———: ———: ———: ———: **Proof of Custom Inadmissible Under General Denial.** And this is true even though such custom is relied upon by defendant and the answer is general denial.

6. **INSTRUCTIONS: Instruction on Burden of Proof Not Prejudicial Error.** Where the only instruction given at the request of plaintiffs was on the measure of damages, defendant was not harmed by the court's action in giving of its own motion the usual instruction on the burden of proof.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. Kent Koerner*, Judge.

AFFIRMED.

*Watts, Gentry & Lee* for appellant.

(1) The court erred in overruling both demurrers to the evidence. (a) The only evidence tending to show that a sponge was found in Mrs. Tate's abdomen was so exceedingly weak, was given in such a vacillating manner, and under circumstances which showed clearly that the witness either did not know what he was talking about, and, hence, was mistaken, or that he was deliberately falsifying; that such evidence amounts merely to a bare scintilla of evidence and constitutes no substantial evidence whatever. In this State, as in many other States, the rule is that the defendant's demurrer to the evidence should be sustained when no substantial evidence in proof of cause of action is offered, a bare scintilla of evidence being wholly insufficient. McNulty v. Railroad, 166 Mo. App. 439; State ex rel. v. Hallon, 166 Mo. App. 422; Dutcher v. Railroad, 341 Mo. 137; Cluett v. N. E. L. & P. Co., 220 S. W. 865; Pepke v.

Grace Hospital, 90 N. W. 278; Dye v. Corbin (W. Va.), 53 S. E. 147. (b) According to the testimony of plaintiffs' expert witness, the most that can be said of the case is that it is barely possible that death may have been produced by peritonitis, caused by leaving a sponge in the abdomen four or five days, if such sponge was left there; but that, on the other hand, peritonitis is very frequently caused by other causes, several of which were present in Mrs. Tate's case. This leaves the whole question in the realm of speculation or conjecture. When such is the case a demurrer to the evidence should be sustained, and the jury should not be permitted to guess. Warner v. Ry. Co., 178 Mo. 125; Goransson v. Riter Connelly Mfg. Co., 186 Mo. 300; Kerr v. Bush, 215 S. W. 393; Stalock v. Holm, 111 N. W. 264; Canefelt v. Bush, 178 Mo. App., l. c. 491; State ex rel. Bush v. Sturgis, 221 S. W. 91; Saas v. Hindmarsh, 184 N. Y. S. 467; Potorik v. State, 181 N. W. 181; Coombs v. James (Wash.), 144 Pac. 536; Yaggle v. Allen, 48 N. Y. S. 827; Merriman v. Hamilton (Ore.), 130 Pac. 406; Dye v. Corbin (W. Va.), 53 S. E. 147; Ewing v. Goode, 78 Fed. 442; Boner v. Nicholson, 161 S. W. 309. (2) The court erred in giving instruction numbered 6, which is the ordinary instruction usually given, telling the jury where the burden of proof rests, and defining the terms "burden of proof" and "preponderance of the evidence." (3) The instruction requested by the defendant and refused by the court should have been given, and its refusal was error. This instruction was justified by the evidence of Dr. Kieffer, as well as by that of Dr. Walter Tyzzer, and it properly declared the law.

*Farthing & Farthing, William O. Reeder* and *Ernest A. Green* for respondents.

(1) The court did not err in overruling the defendant's demurrers to the evidence. (a) Not only was there substantial evidence that the defendant negligently

left a sponge in the abdomen of Mrs. Tate, but also the great weight of the evidence establishes that fact. Reeves v. Lutz, 179 Mo. App. 80; Krinard v. Westermann, 216 S. W. 940; Brooks v. Brookes, 186 S. W. 1105; Fiester v. Drozda, 185 S. W. 748; Perkins v. Kilpatrick, 193 S. W. 876; Independence Electric Co. v. Farley Bros., 192 S. W. 129; Pounds v. Farmers' Union Merc. Co., 190 S. W. 374; Middleton v. Ry., Light, Heat & Power Co., 195 S. W. 527, 196 Mo. App. 258; Woehner v. F. C. Riddle & Bro. Casket Co., 196 S. W. 381; Maginnis v. Ry. Co., 268 Mo. 667; Dawson v. Railroad Co., 193 S. W. 43.    (b)    The testimony of Dr. Cables, plaintiffs' expert, when taken with all the other evidence in the case, clearly shows that the death of plaintiffs' mother was due to peritonitis, caused by defendant's negligence in leaving the sponge in her abdomen. All of the testimony in the case shows that none of the other causes for peritonitis were present in Mrs. Tate's case. Coffey v. Tiffany, 192 Mo. App. 471; Sontag v. Ude, 191 Mo. App. 624; Fields v. Met. St. Ry. Co., 169 Mo. App. 633; Knoche v. Pratt, 187 S. W. 578, 194 Mo. App. 300; Dawson v. Railroad Co., 193 S. W. 43.    (2)    Instruction numbered 6, given by the court of its own motion, was properly given, and defendant was in nowise prejudiced thereby. Plaintiffs were not required, under the law, to request any instructions whatever. Richards v. Kansas City, 181 Mo. App. 338; Morgan v. Mulhall, 214 Mo. 451; Jones v. Pub. Co., 240 Mo. 210; Wilson v. Ry. Co., 122 Mo. App. 672; Powell v Railroad Co., 255 Mo. 420; Powell v. Railroad, 255 Mo. 452.    (3)    The court very properly refused defendant's requested instruction. (a)    It did not properly declare the law.    Coffey v. Tiffany, 192 Mo. App. 471; Davis v. Kerr, 239 Pa. 351, 86 Atl. 1007, 46 L. R. A. (N. S.) 611; Ruth v. Johnson, 96 C. C. A. 643, 172 Fed. 191; Palmer v. Humiston, 87 Ohio St. 401, 45 L. R. A. (N. S.) 640; Harris v. Fall, 27 L. R. A. (N. S.) 1174, 100 C. C. A. 497, 177 Fed. 79; Akridge v. Noble, 114 Ga. 949.    (b)    There was no evidence on which to base same.    (c)    It ignored the issue

of defendant's negligence in inserting the sponge in Mrs. Tate's abdomen in such a position as that it was impossible for him find it, which was negligence in itself. Authorities cited under Point 1, supra; Authorities cited under Point 3 (a), supra.

NIPPER, C.—This suit was brought by minor children against a physician for damages for malpractice claimed to have resulted in the death of the mother of the minor children. In the original petition two other physicians, several nurses, and a sanitarium were also named as defendants. At the close of the plaintiffs' case plaintiffs dismissed as to all the defendants except Dr. Walter G. Tyzzer.

In the petition, after alleging the appointment of the next friend for the plaintiffs, it is alleged that Irma R. Tate was the mother of the plaintiffs, and that on the 10th day of February, 1916, she was afflicted with an ovarian tumor; that the defendants named as physicians were engaged in the practice of medicine and surgery, and that the sanitarium association was conducting a sanitarium, and the nurses mentioned were engaged in nursing patients in said sanitarium, and that all of the defendants held themselves out as skilled in their profession; that on the 10th day of February, 1916, the mother of the plaintiffs employed the defendants to operate upon her to remove said diseased ovary and to heal the said disease; and that the said defendants in their various capacities undertook the operation, treatment and care of the plaintiffs' said mother for said purpose, and on said 10th day of February performed an operation for said purpose and gave instructions for the care of plaintiffs' mother, but it is alleged that the defendants so negligently and unskillfully conducted themselves in and about said operation that through and by reason of their negligence and unskillfulness, they caused a strip of surgical gauze or sponge to be inserted and remain in the abdominal cavity of the plaintiffs' mother, and caused her intestines

to be replaced in an unnatural and abnormal position, which acts of negligence caused the bowels of said Irma R. Tate to become locked, inflamed, enlarged and constipated, and further caused the disease of peritonitis to develop, which acts of negligence and unskillfulness and the results thereof caused the death of said Irma R. Tate on the 18th of February, 1916, in the City of St. Louis. The ages of the plaintiffs, all of whom were minors of tender years, are then stated, as is the fact that their mother died more than six months prior to the institution of the suit. The petition closes with a prayer for damages in the sum of $10,000.

The answer consisted of a general denial.

Plaintiffs recovered judgment for $5,000, and defendant appeals.

At the trial of this case three witnesses testified for plaintiffs, namely, Thomas A. Tate, father; Mrs. Ruth White, the father's sister; and Dr. H. A. Cables.

The deceased lived with her husband and minor children near Toledo, in the State of Illinois, and on or about the 10th of February, 1916, at the suggestion of physicians, came to St. Louis and to the Mayfield Memorial Hospital, where she was operated upon by the defendant, who was assisted by his son, Dr. Robert G. Tyzzer, who administered the anaesthetic, and the nurses who were named as defendants in the original suit. On the morning of the 15th of February, 1916, a second operation was performed by the defendant to ascertain what her trouble was, and why she was not getting any better.

Thomas A. Tate, the husband, was present in the operating room part of the time during both operations. On the 18th of February following the second operation, Irma R. Tate died. At each of these operations Mr. Tate testified that he saw the operating surgeon using gauze sponges for the purpose of wiping away the blood, and in packing the intestines during the operation. He also states that at the first operation, in addition to the defendant, there were in the operating room, Dr. May-

field, Dr. Robert Tyzzer, the defendant's son; Stella Tyzzer, Ruth Catt, Ethel Burnsides, and Bertha Wolpert. He was there only a part of the time during this first operation. In addition to those above named, he says his sister, Ruth White was present. After the first operation deceased continued to grow worse until the morning of the 15th of February, 1916, when defendant decided she would have to be operated upon again to see what was the matter with her. Defendant performed the second operation also, which took place on the above date, and between two and three o'clock in the morning. Mr. Tate states he does not remember all who were present at the second operation, but remembers Dr. Walter G. Tyzzer, Dr. Robert Tyzzer and his wife Stella, and Bertha Wolpert. As to what took place at the second operation, we quote from his testimony as follows:

"Q.    State to the jury what you observed yourself at the time of this second operation? A. Well, they taken her into the operating room and put her under the anaesthetic, Dr. Robert Tyzzer did that; and Dr. Walter G. Tyzzer he took the place where they had before the first time, it had healed up, and he took his hands and opened it up and commenced taking the bowels out.

"The Court: Taking what?

"A.    Taking the bowels out. So then they kept coming out and coming out, and directly out come one of these sponges that was referred to, and the doctor—

"Mr. Green: You say this sponge came out of the wound? A. Yes, sir.

"Q.    Now, state to the jury the character of the sponge that you saw come out of this wound that the doctor opened and the condition, and the condition of your wife at that time? A. Well, it come out, and I seen it as soon as it come out; and as soon as Dr. Walter Tyzzer seen it he got hold of it, and it was—oh, it was damp, of course, like it would be; and her bowels was all red and inflamed. And so then just as soon as he seen it and got hold of it he just took it and held it

in his hand and went on; and then as soon as he got hold of it and got it in his hand then he called for one of the nurses to hand him another one. She did. Then he took the one that he asked for and mopped all around on her stomach and cleaned the blood and stuff up and throwed them both under the table in the waste bucket. He went ahead; he didn't see nothing at all. He said something to Dr. Robert, but I couldn't understand what he said, he said it in a low tone, and I couldn't understand what he said.''

The next day he says Dr. Walter Tyzzer came into the room where his wife was, and stated to her, in his presence, that he understood that he (Tate) had told her that a gauze sponge had been left in the abdomen. His wife answered that she wanted to know if it was true, when defendant answered, ''Possibly we have made a mistake,'' and went out of the room, and called Tate to follow. After they were out of the room he says the defendant told him to see Miss Catt some time between that time and morning, and then he would come back and try to straighten things out. As to the conversation the next morning, we again quote from Tate's testimony:

''Q. State to the jury what the conversation was; what was said? A. He just came up there and asked me if I had saw Miss Catt, and I told him no, I hadn't saw her. Which he wanted me the night before to see her before he come back the next morning, and I didn't see her. So he got back the next morning, asked me if I had saw her, and I told him no I hadn't. He says, 'Let's see if we can find her.' She wasn't hard to find, being on the floor. And he got her and Stella Tyzzer and Miss Catt and the Burnsides lady and took us in the operaing room and there he explained to them what I had accused him of doing.

''Q. Now, you say he explained to them; state what he said, that is what we want. A. He said that I had accused him of leaving that gauze sponge in there; and he told them that if I could prove to the court that he

had left it in there that I could hurt their business awful bad, and he went ahead and asked them if they would swear that there were thirty-one of them gauzes in there when he commenced.

"Mr. Gentry: How many?

"A. Thirty-two. He asked them if they would swear there was thirty-two there when he commenced, and they said they would; and then he asked them if they would swear there was thirty-two when they got through; they said they would; and he said, 'Well, if you swear that, that is all we can do.'"

This conversation took place on the morning of the 17th.

When witness Tate was being questioned as to the time and under what circumstances he saw the gauze removed, he said:

"Q. You didn't see it until it was outside of the abdomen? A. No, I couldn't see it until it was outside, but I saw it as it came out and was on the outside.

"Q. Well, it was completely on the outside when you first saw it? A. No, sir; seen it coming right out with the intestines. Of course, I could not see it until it did get partly out anyway, but I saw it before he got hold of it and got it in his hand."

When asked further if he saw the piece of gauze for the first time when it was outside the body, or if he saw it actually coming through the opening of the abdomen, he answered:

"Well, the bowels were out. I didn't see it until they come out, the bowels. It was on the outside when I saw it."

When asked again how far the gauze was from the opening when he saw it, he said: "That would be pretty hard to tell," but that it was not very far, after which we again quote from the record:

"The Court: Did you see it come outside of the wound? Was it inside when you first saw it? A. No, I didn't see it on the inside at all, I did't see it, you might say, until it got clear out.

"Mr. Gentry: Was it clear out when you first saw it? A. Yes.

"The Court: You didn't see it coming out? A. I didn't see it coming out.

"Mr. Green: The question was did you see it coming out? A. I will say I seen it just as soon as it could get out; seen it as soon as anybody could see it.

"Mr. Gentry: Let us not misunderstand each other; it is an important matter; I want you to tell that jury— you say the intestines were coming out of your wife; now did you see this piece of gauze as it came out of your wife, or was the first time you saw it it was outside entirely of the wound? A. Well, I will say I seen it as it—well, I didn't see—

"Mr. Gentry: Speak louder; I can't hear you.

"A. I didn't see it in there; I seen it just as it got plumb out, as it was—

"Q. It was plumb out when you saw it, as you call it?

"A. It was as nigh out as it could be, about.

"Q. Wasn't any part in the wound? A. As a fellow says, that would be awful hard to tell."

Ruth White, sister of deceased's husband, testified that she was present a portion of the time during the first operation, and that after the operation, and while the deceased was still on the operating table, she heard the defendant and Miss Catt arguing about the number of sponges, Miss Catt claiming there were only thirty-one, and defendant saying there were thirty-two. She says Miss Catt was present at this time because she heard the doctor call her name. Ruth White was not present at the second operation.

Dr. Cables, in answer to hypothetical questions, stated that at the time of the second operation, in his opinion, deceased was suffering from peritonitis; that the peritonitis could have been caused by this sponge, and that, in his opinion, the patient died of peritonitis

Dr. Robert Tyzzer, who administered the anaesthetic at the time of both operations, Bertha Wolpert, Ethel

Burnsides, Stella Tyzzer (who was head nurse), the defendant, and Dr. A. R. Kieffer, who was called as an expert, all testified on behalf of defendant. With the exception of Dr. Kieffer, all of the above named testified that they were present at the time of second operation, and that no sponge came out of the abdomen of deceased on that occasion.

It appears from the evidence of defendant's witnesses that Miss Catt was not present at the first operation, but was present a portion of the time during the second operation. Miss Catt having left the hospital, and not being located by defendant, was not called as a witness.

Miss Ethel Burnsides testified to counting the sponges both before and after the first operation, and stated there were thirty-two.

The defendant denied having made the statement to Mrs. Tate that a mistake had been made. The defendant further testified that he had asked Miss Burnsides, the surgical nurse, at the close of the first operation, if all sponges had been accounted for, and she replied that they had.

Defendant showed by the testimony of Dr. Kieffer, that at the time in question the custom of surgeons in the city of St. Louis was to depend upon nurses in the hospital to count and keep track of the number of sponges used in abdominal operations; that a surgically clean sponge left in the abdomen may remain there an indefinite time without causing any trouble.

Defendant contends that his demurrer should have been sustained, because there was no substantial evidence upon which to base a verdict for plaintiff, contending in that connection that the death of Irma R. Tate may have been caused by causes other than peritonitis, and that where death or injury may result from one of two causes, for one of which and not the other, the defendant is liable, and plaintiff must show with reasonable certainty that the cause for which the defendant is liable produced the result, and plaintiffs' right to recovery cannot be left to conjecture.

The evidence in this case discloses that peritonitis may be caused by things or causes other than leaving a sponge in the abdomen, but no such conditions are shown to exist in this particular case. Deceased did not have peritonitis at the time of the first operation, but according to the testimony of the defendant, she had peritonitis at the time he performed the second operation upon her. There is no condition shown in this case which caused the peritonitis other than the leaving of this sponge in the abdomen of deceased. The bowels or intestines were shown to have been red and inflamed at the point where witness Tate said he saw the defendant remove the sponge when it came out during the second operation. Deceased's husband stated, in no uncertain terms, that he saw this sponge taken out of the abdomen during the second operation. His sister stated that she heard the argument between the defendant, and the nurse, Miss Catt, at the time of the first operation, as to the number of sponges which were accounted for, defendant claiming there were thirty-two, and Miss Catt saying there were only thirty-one. This was denied by defendant and his witnesses.

On the main issue there was a sharp conflict in the testimony. If plaintiffs' testimony is to be taken as true, and all reasonable inferences drawn in favor thereof, as we must after verdict, we think there was sufficient testimony to take the case to the jury, and there was no error in overruling defendant's demurrer. [Sontag v. Ude, 191 Mo. App. 617, 177 S. W. 659; Krinard v. Westerman, 279 Mo. 680, 216 S. W. 938; Reeves v. Lutz, 179 Mo. App. 61, 162 S. W. 280.]

Defendant contends that Tate's testimony reveals such deliberate misstatements and absolute inaccuracy that is unworthy of belief, and amounts to a mere scintilla of evidence. Considering Tate's station in life, and the fact that he was beng subjected to cross-examination by a shrewd and careful lawyer, we are unable to see any particular inconsistency in any of his testimony. The jury had an opportunity to see and observe the conduct of the witness while upon the stand.

His demeanor and facial expression were in evidence as well as his spoken testimony. Taking his testimony as a whole, we are unable to see any particular inconsistency in his statements.

The defendant requested, and the court refused to give the following instruction, and the action of the court in so doing is assigned by defendant as reversible error:

"If the jury find from the evidence in this case that in the performance of surgical operations in the City of St. Louis, at the time when plaintiffs' mother was operated on on February 10, 1916, it was the custom among ordinarily careful, skillful and prudent surgeons, whilst performing abdominal operations, to leave to the nurses assisting in said operation the duty of counting the sponges that were used, and that on said occasion the defendant left said duty to two experienced nurses who were assisting in said operation, and that before closing up the wound which had been made through the wall of the abdomen in said operation the defendant inquired of said nurses as to whether or not all of the sponges were accounted for, and was then and there informed that they were, then the defendant was not negligent in failing to count the sponges himself, and had a right to rely upon the count as correct, and if defendant himself looked into the abdomen and could not, by exercising ordinary care, discover that any sponge was then in the abdomen, then defendant cannot be held liable in damages in this case, even if a sponge was left concealed in plaintiffs' mother's abdomen where it was not seen by defendant."

This contention cannot be upheld. Without passing upon the question as to whether or not it correctly declares the law under certain conditions, this instruction permits the defendant to rely upon a special and local custom to take his case out of the general rules of law when no such custom was pleaded by defendant, nor was it shown that deceased had any knowledge of its existence. If a custom is relied upon it must be pleaded. [Dietz v. Nix, 202 Mo. App. 639, 216 S. W. 791; Kirkland

v. Bixby, 282 Mo. 462, 222 S. W. 462; Hayden v. Grillo's Adm'r., 42 Mo. App. 1; Palmer v. Humiston, 87 Ohio St. 401.]

And this is true even though such custom is relied upon by defendant, and the answer a general denial. In Hayden v. Grillo's Adm'r., supra, the court had before it an almost identical question. Appellant assigned as error the court's refusal to give a similar instruction, but this court, speaking through THOMPSON, J., said:

"The only answer, on which the case went to trial, was a general denial. It is necessary to plead a special custom where such a custom is relied upon, to take a case out of the general rules of the law."

This case has been cited with approval by our Supreme Court many times.

In the present case the instruction tendered by defendant and refused, proceeds upon the hypothesis of a custom existing among physicians and surgeons in the city of St. Louis. Such custom was not pleaded, and therefore was not an issue in the case.

The only instruction given at the request of plaintiffs was an instruction on the measure damages. The court of its own motion gave and read to the jury the usual instruction on the burden of proof. Defendant assigns this as error, for the reason that no other instruction was given at the request of plaintiffs except an instruction on the measure of damages, but does not point out, or undertake to point out, in what way defendant could be harmed by the giving of this instruction.

Finding no reversible error, the Commissioner recommends that the judgment be affirmed.

PER CURIAM:—The foregoing opinion of NIPPER, C., is adopted as the opinion of the court.

The judgment of the circuit court is accordingly affirmed.

*Alllen, P. J., Becker* and *Daues, JJ.,* concur.